# EXHIBIT A

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

HOLLY BLAINE VANZANT, and )
DANA LAND, on behalf of themselves )
and all others similarly situated, )
)
    Plaintiffs, )
)
    vs. )   No.
)
)
HILL'S PET NUTRITION INC.; )
PETSMART, INC.; MEDICAL )   **JURY DEMAND**
MANAGEMENT INTERNATIONAL, INC. )
d/b/a BANFIELD PET HOSPITAL; )
BLUEPEARL VET, LLC, )
)
    Defendants. )

FILED – 1
2017 MAR –2 PM 3:44

2017CH03121
CALENDAR/ROOM 09
TIME 00:00
Class Action

## CLASS ACTION COMPLAINT

Plaintiffs ("Plaintiffs or "Class Representatives"), individually and on behalf of others

similarly situated, file this Class Action Complaint against Defendants Hill's Pet Nutrition, Inc.

("Hill's"), PetSmart, Inc. ("PetSmart"), Medical Management International, Inc. d/b/a/ Banfield

Pet Hospital ("Banfield Pet Hospital"), and BluePearl Vet, LLC ("Blue Pearl Vet Hospital")

(collectively "Defendants") and allege as follows:

### INTRODUCTION

1.    Plaintiffs bring this class action on behalf of themselves and all other similarly

situated Illinois consumers for, *inter alia*, damages, injunctive relief, and all other relief this Court

deems just and proper based on Defendants' violation of the Illinois Consumer Fraud and

Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* Defendants used deception and

misrepresentations and omissions of material facts in marketing, labeling, and/or selling

"prescription" pet food at above-market prices. Defendants' actions caused reasonable consumers,

including Plaintiffs, to overpay and make purchases they otherwise would not have made without Defendants' deceptive, unlawful, unfair, and fraudulent business practices.

## PARTIES

2.      Plaintiff / Class Representative Holly Blaine Vanzant ("Ms. Vanzant") is a resident of Cook County, Illinois.

3.      Plaintiff / Class Representative Dana Land ("Ms. Land") is a resident of Cook County, Illinois.

4.      Defendant Hill's is a Delaware corporation with its principal place of business in Topeka, Kansas.

5.      Defendant PetSmart is a Delaware corporation with its principal place of business in Phoenix, Arizona.

6.      Defendant Banfield Pet Hospital is a Delaware corporation with its principal place of business in Vancouver, Washington.

7.      Defendant Blue Pearl Vet Hospital is a Florida corporation with its principal place of business in Tampa, Florida.

## JURISDICTION AND VENUE

8.      Jurisdiction over this matter is proper pursuant to 735 ILCS 5/2-209(a)(1) (transaction of any business within the State), Section 2-209(b)(4) (corporation doing business within the State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the U.S. Constitution).

9.      Venue is appropriate in Cook County pursuant to 735 ILCS 5/2-101 because this transaction, or some part thereof, occurred in Cook County. Defendants are nonresidents of the State, making jurisdiction proper in any county.

2

## FACTUAL ALLEGATIONS

### A. Defendants Manufacture, Market, and/or Sell Prescription Pet Food.

10.    Pet food sold at retail by "prescription" (referred to herein as "Prescription Pet Food") is marketed and sold across the United States, including in Illinois.

11.    Defendants manufacture, market, and/or sell one or more lines of Prescription Pet Food in Illinois.

12.    Defendants also manufacture, market, and/or sell several lines of non-prescription pet food.

13.    Defendant Hill's is in the business of manufacturing, producing, marketing, advertising, distributing, and/or selling Prescription Pet Food under various brands or labels, including, but not limited to, Hill's "Prescription Diet" cat and dog food.  Hill's markets, advertises, distributes, and/or sells Prescription Pet Food to consumers in Illinois.

14.    Defendant PetSmart is the largest pet goods retailer in the United States. A majority of its nationwide stores include an onsite Banfield Pet Hospital (see *infra* at ¶16).  PetSmart sells Prescription Pet Food, including Hill's "Prescription Diet" cat and dog food, to consumers in Illinois who present a prescription from a veterinarian.  PetSmart also sells other non-prescription cat and dog foods manufactured by Defendant Hill's and other pet food manufacturers.

15.    PetSmart also owns pet360.com, an e-commerce business that sells pet food. Through pet360.com, PetSmart sells Prescription Pet Food to consumers in Illinois who present a prescription from a veterinarian.

16.    Defendant Banfield Pet Hospital is the largest veterinary chain in the United States, operating veterinary clinics at PetSmart locations and stand-alone locations.  Banfield Pet Hospital

3

sells Prescription Pet Food – prescribed by Banfield Pet Hospital veterinarians – to consumers in Illinois.

17.     Blue Pearl Vet Hospital is the largest chain of animal specialty and emergency care clinics in the United States with more than 50 locations. Blue Pearl Vet Hospital sells Prescription Pet Food – prescribed by Blue Pearl Vet Hospital veterinarians – to consumers in Illinois.

18.     Prescription Pet Food is prescribed by a veterinarian, similar to a drug that a veterinarian would prescribe for a cat or dog.

19.     A veterinarian may prescribe Prescription Pet Food for sale to pet owners pursuant to Defendants' marketing schemes, as described below.

20.     To fulfill this prescription, a veterinarian may (a) sell Prescription Pet Food directly to the retail consumer with whom the veterinarian-client-patient relationship exists or (b) provide the consumer a written prescription that can be presented at a business that sells Prescription Pet Food, such as Banfield Pet Hospital locations, Blue Pearl Vet Hospitals, and PetSmart stores with an onsite veterinarian.

21.     Prescription Pet Food may be prescribed only for a finite period of time or may be prescribed indefinitely, such as for the remainder of the pet's life.

**B.  Defendants' Marketing, Labeling, and/or Sale of Prescription Pet Food is Deceptive.**

22.     The Food and Drug Administration ("FDA") regulates foods and drugs, including pet foods and drugs.

23.     The FDA does not require that Prescription Pet Food be sold by prescription.

24.     No other governmental body or agency requires that Prescription Pet Food be sold by prescription.

25.     Prescription Pet Food:

4

    a.  has not been subjected to the FDA process for evaluating the quality of drug ingredients and manufacturing processes;

    b.  has not been subjected to the FDA process for evaluating the efficacy of claims and propriety of representations;

    c.  does not contain any drug approved by the FDA; and

    d.  does not bear the mandatory legend borne by those items required by the FDA to be sold by prescription (for example, "Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.")

26.    Defendants restrict the sale of Prescription Pet Food at retail to those with a prescription from a veterinarian. Thus, retail consumers, including Plaintiffs, cannot purchase Prescription Pet Food without a prescription from a veterinarian.

27.    Prescription Pet Food is not required to be sold by prescription other than as imposed by Defendant Hill's and those acting in concert with Defendant Hill's to advance and perpetuate the prescription requirement, including Defendants PetSmart, Banfield Pet Hospital, and Blue Pearl Vet Hospital.

28.    Defendants PetSmart, Banfield Pet Hospital, and Blue Pearl Vet Hospital adhere to, advance, and perpetuate the so-called prescription requirement for Prescription Pet Food because they profit from selling Prescription Pet Food at above-market prices and/or they profit from the continued veterinary care necessary to secure the prescription required to purchase Prescription Pet Food.

29.    Defendants' self-imposed prescription requirement enables them to market and sell Prescription Pet Food at above-market prices that would not otherwise exist without the prescription requirement.

5

30. The prescription requirement is a false, deceptive, and misleading marketing scheme. Each Defendant participates in the false, deceptive, and misleading marketing scheme by adhering to, advancing, and perpetuating the prescription requirement for Prescription Pet Food.

31. For example, Defendants repeat the message that Prescription Pet Food requires a prescription in the distribution, marketing, advertising, and sale of Prescription Pet Food, thereby suggesting to consumers that Prescription Pet Food is legally required to be sold by prescription. But that message is false because Prescription Pet Food is not legally required to be sold by prescription.

32. At all relevant times, Defendants knew that Prescription Pet Food is not legally required to be sold by prescription and accordingly, they knew that their explicit or implicit representation that Prescription Pet Food is legally required to be sold by prescription is false.

33. Defendants also manufacture, market, and/or sell one or more non-prescription pet foods, which are marketed for the same or similar conditions as Prescription Pet Food and are sold at significantly lower prices than Prescription Pet Food.

34. On information and belief, the Prescription Pet Food manufactured and/or sold by Defendants contains no drug or other ingredient that is not also common in non-prescription pet food.

35. On information and belief, there are no material differences between Prescription Pet Food and non-prescription pet food except for the requirement of a prescription in order to purchase Prescription Pet Food. To the extent there are any differences, they are not sufficient to explain the price disparity between Prescription Pet Food and non-prescription pet food.

36. In addition to requiring consumers to present a prescription from a veterinarian in order to purchase Prescription Pet Food despite the fact that it is not legally required to be sold by

6

prescription, Defendants make further material misrepresentations, expressly or implicitly, that Prescription Pet Food: (a) contains a drug or other regulated ingredient; (b) contains some substance medically necessary to the health of the pet for which it was prescribed; (c) is materially different than non-prescription pet food; (d) is a substance that has been evaluated by the FDA as a drug; and/or (e) is a substance as to which Defendants' representations regarding intended uses and effects have been evaluated by the FDA.

37. For example, as to Hill's "Prescription Diet" line, Hill's sells Prescription Pet Food purportedly meant to treat or prevent conditions, including, but not limited to, those related to the following: "weight management," "digestive care," "skin/food sensitivities," "urinary care," "kidney care," "dental care," "aging care," "glucose management," "heart care," "joint care," "liver care," "skin sensitivity," "thyroid care," and "urgent care."

38. Hill's represents: "No matter what health issues your dog is facing, our alliance with veterinarians puts us in a unique position to find a solution. Ask your vet how the Prescription Diet® dog foods can help his weight, mobility, kidney, digestive, urinary and skin and coat health." Hill's also represents: "No matter what health issues your cat is facing, our alliance with veterinarians puts us in a unique position to find a solution. Ask your vet how Prescription Diet® can help your cat's weight, kidney, digestive and urinary health." In addition, bags and cans of Hill's "Prescription Diet" dog and cat food represent that the contents are "Clinical Nutrition" and bear an image of a stethoscope.

39. As to PetSmart's website, PetSmart designates Prescription Pet Food with the language "RX Required." For example, for Hill's Prescription Diet i/d Canine Gastrointestinal Health Dog Food and Hill's Prescription Diet c/d Multicare Feline Bladder Health Cat Food, *inter alia*, PetSmart represents that "this brand of food requires a vet prescription. Product is only

7

available for purchase in our PetSmart stores or online at our Pet360 Pharmacy site." PetSmart includes a link entitled "shop pet360 pharmacy," which directs consumers to its pet360.com website when the link is activated.

40.     On its pet360.com website, PetSmart designates Prescription Pet Food with an "Rx" symbol and represents "this item is an Rx Food or medication and requires a prescription. Once you place the order, the Pet360 Pharmacist will work directly with your veterinarian to verify the prescription and dosage information."

41.     As to prescriptions written by its veterinarians or transferred to Banfield Pet Hospital from another veterinarian, Banfield Pet Hospital uses prescription cards that refer to the pet's Prescription Pet Food with an "RX#" and an "RX date." PetSmart requires consumers to present their pet's prescription card, issued by Banfield Pet Hospital, in order purchase Prescription Pet Food.

**C. Defendants' Marketing, Labeling, and/or Sale of Prescription Pet Food is Unlawful.**

42.     In addition, if Prescription Pet Food is a "drug" under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA"), Defendants have manufactured and/or sold misbranded substances to consumers by failing to comply with the regulatory requirements of the FDCA.

43.     Prescription Pet Food falls within the statutory definition of a "drug" under the FDCA because it is marketed to diagnose, cure, mitigate, treat, or prevent diseases or other conditions.

44.     Prescription Pet Food also meets the definition of "food" under the FDCA because it is an article used for food for animals.

8

45.    Pursuant to the FDCA, in general, new drugs are unsafe unless they have an approved application, a conditional approval, or an index listing.

46.    None of the Prescription Pet Food manufactured, marketed, labeled, and/or sold by Defendants is an approved or listed new drug. Thus, if Prescription Pet Food is a drug, it is misbranded under the FDCA.

47.    The FDCA requires that all drug manufacturers register and list drugs with the FDA.

48.    None of the Prescription Pet Food manufactured, marketed, labeled, and/or sold by Defendants complies with the drug registration and listing requirements of the FDCA. Thus, if Prescription Pet Food is a drug, it is further misbranded under the FDCA.

49.    The FDCA also requires that any animal drug products be manufactured in accordance with current good manufacturing practices applicable to drugs.

50.    On information and belief, the Prescription Pet Food manufactured, marketed, labeled, and/or sold by Defendants does not comply with the current good manufacturing practices applicable to drugs pursuant to the FDCA. Thus, if Prescription Pet Food is a drug, it is misbranded under the FDCA.

51.    If Prescription Pet Food is a drug, Defendants have manufactured and/or sold misbranded substances in violation of the FDCA. Accordingly, Defendants' marketing, labeling, and/or sale of Prescription Pet Food constitutes an unlawful business practice or act in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

**D. Plaintiffs Would Not Have Purchased Prescription Pet Food Absent Defendants' Deceptive and Unlawful Conduct.**

52.    Plaintiff / Class Representative Vanzant has a cat named Tarik. After Tarik had to undergo emergency surgery for bladder stones at Blue Pearl Vet Hospital in Skokie, Illinois, the

9

veterinarian at Blue Pearl Vet Hospital prescribed Hill's Prescription Diet c/d for him. Ms. Vanzant purchased the prescribed Hill's Prescription Diet c/d Multicare Feline Bladder Health Cat Food for Tarik in Illinois and fed it to him for approximately three years. In order to purchase the Hill's Prescription Diet food from PetSmart, Ms. Vanzant had to transfer the prescription from Blue Pearl Vet Hospital to Banfield Pet Hospital. Banfield Pet Hospital provided Ms. Vanzant with a pet prescription card containing her cat's name and prescription, which she was required to show to the cashier at PetSmart each time she purchased the Hill's Prescription Diet cat food.

53. Plaintiff / Class Representative Land has a cat named Chief. After Chief was diagnosed with diabetes, his veterinarian prescribed Hill's Prescription Diet m/d Feline Glucose / Weight Management Cat Food to manage his diabetes. Ms. Land's cat experienced loss of use in his hind legs due to diabetic neuropathy. Ms. Land purchased the prescribed Hill's Prescription Diet wet and dry cat food for Chief in Illinois and fed it to him for approximately one year. In order to purchase the Hill's Prescription Diet cat food from PetSmart, Ms. Land had to transfer the prescription from Chief's veterinarian to Banfield Pet Hospital. Banfield Pet Hospital provided Ms. Land with a pet prescription card containing her cat's name and prescription, which she was required to show to the cashier at PetSmart each time she purchased the Hill's Prescription Diet cat food.

54. To reasonable consumers, including Plaintiffs, Prescription Pet Food is prescribed and purchased by veterinarian's orders—in the exact same manner as a prescription drug for a dog or cat.

55. Plaintiffs, as reasonable consumers, associate prescription fulfillment with following a doctor's orders.

10

56.     Defendants are profiting from reasonable consumers', including Plaintiffs', natural inclination to comply with the prescriptions of medical professionals for the health of their pets.

57.     Plaintiffs, as reasonable consumers, reasonably expect and believe that a substance that requires a prescription is: (a) a substance legally required to be sold by prescription; (b) a drug or other regulated ingredient; (c) a substance medically necessary to the health of the pet for which it was prescribed; (c) a substance that has been evaluated by the FDA as a drug; and/or (d) a substance as to which Defendants' representations regarding intended uses and effects have been evaluated by the FDA.

58.     Plaintiffs, as reasonable consumers, would not have purchased Prescription Pet Food, or would not have purchased Prescription Pet Food when priced so excessively relative to similar non-prescription pet foods absent Defendants' deceptive, unlawful and/or unfair acts and practices, including the false, deceptive, and misleading marketing scheme described herein.

59.     Retail consumers, including Plaintiffs, have overpaid and made purchases for Prescription Pet Food that they otherwise would not have made without Defendants' manipulation of the prescription requirement and related misrepresentations.

## CLASS ALLEGATIONS

60.     Plaintiffs / Class Representatives Vanzant and Land bring this action pursuant to 735 ILCS 5/2-801, *et seq.* and seek to represent a statewide Class of all similarly situated Illinois residents who purchased Prescription Pet Food from any retailer in Illinois.

61.     Excluded from the Class are: (a) Defendants, and their legal representatives, officers, directors, assigns and successors; (b) the Judge to whom this case is assigned and the Judge's staff; (c) the attorneys involved in this matter; and (d) all persons or entities that purchased Prescription Pet Food for resale. Plaintiffs reserve the right to amend the Class definitions if

11

discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

62.     The proposed Class is so numerous that individual joinder in this case is impracticable. While the exact number and identities of Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe the Class is likely to consist of hundreds, if not thousands, of individuals.

63.     There are several questions of law and fact that are common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual class members. The common questions of law and fact for Plaintiffs and all Class members include, but are not limited to, whether:

   a. Defendants may impose, advance, and perpetuate a prescription requirement in order to purchase Prescription Pet Food manufactured, marketed, and/or sold by Defendants despite the fact that Prescription Pet Food is not a drug and has not been subjected to FDA review or approval;

   b. The prescription requirement and Defendants' related representations and omissions materially misrepresent that Prescription Pet Food: (1) is legally required to be sold by prescription; (2) contains a drug or other regulated ingredient; (3) contains some substance medically necessary to the health of the pet for which it is prescribed; (4) is materially different than non-prescription pet food; (5) is a substance that has been evaluated by the FDA as a drug; and/or (6) is a substance as to which Defendants' representations regarding intended uses and effects have been evaluated by the FDA;

    c.  Prescription Pet Foods manufactured, marketed, and/or sold by Defendants are misbranded in violation of the FDCA;

    d.  Defendants' actions as described above violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

    e.  Defendants should be required to pay damages, make restitution, and/or disgorge profits as a result of the above-described practices;

    f.  Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

    g.  Plaintiffs and Class members are entitled to compensatory damages and the amount of such damages;

    h.  Plaintiffs and Class members are entitled to restitution and/or disgorgement and the amount of such restitution or disgorgement;

    i.  Plaintiffs and Class members are entitled to punitive damages and the amount of such punitive damages;

64.    Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class action litigation. Plaintiffs' counsel have vast experience in consumer class action cases and have previously been certified as class counsel. Plaintiffs have no interest adverse to those of the Class, and Defendants have no defenses unique to Plaintiffs.

65.    This class action is an appropriate method for the fair and efficient adjudication of the claims involved. The damages suffered by individual Class members are likely not substantial enough for any one class member to incur the costs and expenses of this litigation. Even if Class members were able or willing to pursue such individual litigation, a class action would still be

preferable due to the potential for inconsistent or contradictory judgments and the additional delay and expense to all parties and the court system if individual cases are pursued.

## COUNT I
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)

66. Plaintiffs restate and incorporate by reference paragraphs 1 - 65 of this Class Action Complaint as paragraph 66 as if fully set forth herein.

67. The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act." 815 ILCS 505/2.

68. The Illinois Consumer Fraud and Deceptive Business Practices Act applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

69. Plaintiffs and each Class member are "consumers" as defined by Section 505/1(e) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

70. Defendants are "persons" as defined by Section 505/1(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

71. Defendants manufacture, market, label, and/or sell Prescription Pet Food at prices that are materially in excess of non-prescription pet food without an adequate disclaimer on the Prescription Pet Food label indicating that the product is not legally required to be sold by prescription and/or that the product has not been evaluated or approved by the FDA. In doing so, each Defendant has engaged in deceptive, unlawful, or unfair business acts or practices.

14

72.     In addition to requiring consumers to present a prescription from a veterinarian in order to purchase Prescription Pet Food despite the fact that it is not legally required to be sold by prescription, Defendants make further material misrepresentations, expressly or implicitly, that Prescription Pet Food: (a) contains a drug or other regulated ingredient; (b) contains some substance medically necessary to the health of the pet for which it was prescribed; (c) is materially different than non-prescription pet food; (d) is a substance that has been evaluated by the FDA as a drug; and/or (e) is a substance as to which Defendants' representations regarding intended uses and effects have been evaluated by the FDA.

73.     Each of Defendants' misrepresentations and omissions are misrepresentations and omissions of material fact because Plaintiffs and the Class, as reasonable consumers, would have acted differently had they been aware of these facts, and because the facts concerned the type of information upon which Plaintiffs would be expected to rely in making their decisions to purchase Prescription Pet Food.

74.     Plaintiffs and the Class, as reasonable consumers, would not have purchased Prescription Pet Food, or would not have purchased Prescription Pet Food when priced so excessively relative to similar non-prescription pet food absent Defendants' deceptive, unlawful and/or unfair acts and practices.

75.     As a result of Defendants' misrepresentations and omissions of material fact, Defendants have committed, and continue to commit, deceptive, unlawful and/or unfair acts and practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

76.     In addition, if Prescription Pet Food is a drug under the FDCA, Defendants have manufactured and/or sold misbranded substances in violation of the FDCA. Accordingly,

15

Defendants' marketing, labeling, and/or sale of Prescription Pet Food constitutes an unlawful business practice or act in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.

77.     By requiring Plaintiffs and the Class to obtain a prescription in order to purchase Prescription Pet Food and by failing to include an adequate disclaimer on the Prescription Pet Food label, Defendants intended that Plaintiffs and the Class rely on its deceptive, unlawful and/or unfair acts and practices.

78.     Defendants' conduct alleged herein occurred in "trade" or "commerce" as defined by Section 505/1(f) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

79.     Plaintiffs and the Class have suffered damages as a direct and proximate result of Defendants' deceptive, unlawful and/or unfair acts and practices.

80.     Defendants' practices set forth herein offend public policy, were and are immoral, unethical, and oppressive and unscrupulous, and cause substantial injury to consumers.

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in the Illinois Class Action Statute, 735 ILCS 5/2-801, *et seq.*, and certifying the Class defined herein;

B. Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C. Entering Judgment in favor of Plaintiffs and the Class and against Defendants;

D. Enjoining Defendants' unlawful conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E. Awarding Plaintiffs and the Class all compensatory damages and punitive damages to the extent permitted under the Illinois Consumer Fraud and Deceptive Business Practices Act, in addition to their reasonable attorneys' fees and costs; and

F. Granting all such further relief and other relief as the Court deems just and appropriate.

## COUNT II
### (Restitution/Unjust Enrichment)

81. Plaintiffs restate and incorporate by reference paragraphs 1 - 65 of this Class Action Complaint as paragraph 81 as if fully set forth herein.

82. Defendants have unjustly acquired and retained a benefit to the detriment of Plaintiffs and the Class because they retained revenues derived from Plaintiffs' and the Class members' purchases of Prescription Pet Food.

83. Defendants appreciate and are aware of the benefit they have acquired and retained from their conduct.

84. Retention of monies under these circumstances violates the fundamental principles of justice, equity, and good conscience because each Defendant falsely and misleadingly represented through the prescription requirement, their advertising and marketing statements, and/or their failure to include any adequate disclaimer on Prescription Pet Food labels that consumers purchasing Prescription Pet Food:

  a. are purchasing some sort of drug other regulated ingredient;

  b. are purchasing a product medically necessary to the health of the pet for which it was prescribed;

  c. are purchasing a product that has been evaluated by the FDA as a drug;

17

d.  are purchasing a product as to which the representations regarding intended uses and effects have been evaluated by the FDA;

e.  are purchasing a product that is legally required to be sold by prescription; and

f.  are purchasing a product for which a price premium is warranted.

85.     Under the principles of justice, equity, and good conscience, Defendants should not be allowed to keep the money belonging to Plaintiffs and the Class members.

86.     Plaintiffs and the Class have suffered damages as a direct result of Defendants' conduct.

87.     Plaintiffs, on behalf of themselves and the Class, seek restitution for Defendants' unjust and inequitable conduct, as well as interest and attorneys' fees and costs.

88.     Plaintiffs and the Class do not have an adequate remedy at law to redress their damages.

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in the Illinois Class Action Statute, 735 ILCS 5/2-801, *et seq.*, and certifying the Class defined herein;

B.  Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.  Entering Judgment in favor of Plaintiffs and the Class and against Defendants;

D.  Enjoining Defendants' unlawful conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

18

E.  Awarding Plaintiffs and the Class all compensatory damages in addition to their reasonable

attorney's fees and costs; and

F.  Granting all such further relief and other relief as the Court deems just and appropriate.


## JURY DEMAND

Plaintiffs and the members of the Class demand a trial by Jury on any issues triable by a Jury.


Dated:  March 2, 2017                    Respectfully Submitted,


                                         By: _Ellen M. Carey_
                                             One of Plaintiffs' Attorneys

Kevin M. Forde
Michael K. Forde
Ellen M. Carey
Forde Law Offices LLP
111 West Washington Street
Suite 1100
Chicago, IL 60602
(312) 641-1441

2120 - Served          2121 - Served
2220 - Not Served      2221 - Not Served
2320 - Served By Mail  2321 - Served By Mail
2420 - Served By Publication   2421 - Served By Publication
Summons - Alias Summons                          **(01/25/17) CCG N001**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CH03121
CALENDAR/ROOM 09
TIME 00:00
Class Action

Holly Blaine Vanzant and Dana Land
_____
                              (Name all parties)

                    v.

Hill's Pet Nutrition, Inc., et al.

No._____

BluePearl Vet, LLC
c/o CT Corporation
1200 S Pine Island Road
Plantation FL 33324

◉ **SUMMONS** ○ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room **802**_____, Chicago, Illinois 60602

☐ District 2 - Skokie          ☐ District 3 - Rolling Meadows     ☐ District 4 - Maywood
   5600 Old Orchard Rd.            2121 Euclid                        1500 Maybrook Dr.
   Skokie, IL 60077                Rolling Meadows, IL 60008          Maywood, IL 60153

☐ District 5 - Bridgeview      ☐ District 6 - Markham 16501        ☐ Child Support: 50 W.
   10220 S. 76th Ave.             S. Kedzie Pkwy. Markham,            Washington, LL-01,
   Bridgeview, IL 60455           IL 60428                            Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: **49624**
Name: **Forde Law Offices LLP**
Atty. for: **Plaintiffs**
Address: **111 W Washington St, Ste 1100**
City/State/Zip Code: **Chicago IL 60602**
Telephone: **312-641-1441**
Primary Email: *ecarey@fordellp.com*
Secondary Email: *clerk@fordellp.com*
Tertiary Email: *kbrubaker@fordellp.com*

Witness: **DOROTHY BROWN  MAR 0 2 2017**

_____
DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1