## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Holly Blaine Vanzant; et al., | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-02535 |
| Hill's Pet Nutrition, Inc.; et al., | Judge:    Hon. Samuel Der-Yeghiayan |
| Defendants. | |

## DEFENDANTS' JOINT MOTION TO DISMISS FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

BACKGROUND ................................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

I.      FDA'S GUIDANCE TRIGGERS ICFA'S SAFE HARBOR
EXEMPTION ........................................................................................................... 6

II.     PLAINTIFFS FAIL TO PLEAD PROXIMATE CAUSATION ........................... 8

III.    PLAINTIFFS' DECEPTIVE PRACTICES CLAIMS OTHERWISE FAIL ........ 9

IV.    PLAINTIFFS' UNFAIR PRACTICES CLAIMS OTHERWISE FAIL ............. 12

V.     PLAINTIFFS' OTHER CLAIMS FAIL. ............................................................ 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Nw. Mut. Life Ins. Co.*,
172 F.3d 467 (7th Cir. 1999) ...................................................9

*Aliano v. Fifth Generation, Inc.*,
2015 WL 5675423 (N.D. Ill. Sept. 24, 2015) (Der-Yeghiayan, J.) ..............................6, 11, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................6

*Batson v. Live Nation Entm't, Inc.*,
746 F.3d 827 (7th Cir. 2014) ...................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................5

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ...................................................6

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ...................................................10, 11, 14

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...................................................14

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ...................................................15

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)...................................................15

*De Bouse v. Bayer AG*,
922 N.E.2d 309 (Ill. 2009) ...................................................8

*Garrett v. RentGrow, Inc.*,
2005 WL 1563162 (N.D. Ill. July 1, 2005)...................................................13

*Gubala v. Allmax Nutrition, Inc.*,
2015 WL 6460086 (N.D. Ill. Oct. 26, 2015)...................................................15

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012) ...................................................15

ii

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 15

*Messina v. Green Tree Servicing, LLC*,
    210 F. Supp. 3d 992 (N.D. Ill. 2016) ..................................................................... 8

*Mihalich v. Johnson & Johnson*,
    2016 WL 5106970 (S.D. Ill. Sept. 20, 2016) ......................................................... 14

*Moore, et al. v. Mar's Petcare US, Inc., et al.*,
    2017 WL 2931154 (N.D. Cal. July 10, 2017) ............................................... *passim*

*Muehlbauer v. Gen. Motors Corp.*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006) ...................................................................... 9

*Muir v. NBTY, Inc.*,
    2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) ...................................................... 15

*Oliveira v. Amoco Oil Co.*,
    776 N.E.2d 151 (Ill. 2002) ............................................................................ 8, 11

*Padilla v. Costco Wholesale Corp.*,
    2012 WL 2397012 (N.D. Ill. June 21, 2012) ...................................................... 15

*Payton v. Cty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) ............................................................................... 15

*Phillips v. Double Down Interactive LLC*,
    173 F. Supp. 3d 731 (N.D. Ill. 2016) ............................................................. 13, 14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ......................................................................... 9, 10, 13

*Price v. Philip Morris, Inc.*,
    848 N.E.2d 1 (Ill. 2005) .................................................................................... 6, 7

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (2002) ........................................................................................ 13

*Sears v. Likens*,
    912 F.2d 889 (7th Cir. 1990) ................................................................................. 9

*Sidney Hillman Health Center. of Rochester v. Abbott Laboratories & Abbvie Inc.*,
    192 F. Supp. 3d 963 (N.D. Ill. 2016) .................................................................. 8, 9

*Siegel v. Shell Oil Co.*,
    480 F. Supp. 2d 1034 (N.D. Ill. 2007) ................................................................. 10

*Strama v. Toyota Motor Sales, U.S.A., Inc.*,
2016 WL 561936 (N.D. Ill. Feb. 12, 2016) (Der-Yeghiayan, J.) ...........................................10

*UFCW Local 1776 v. Eli Lilly & Co.*,
620 F.3d 121 (2d Cir. 2010)...................................................................................................9

*Wiegel v. Stork Craft Mfg., Inc.*,
946 F. Supp. 2d 804 (N.D. Ill. 2013) ...................................................................................15

*Yeftich v. Navistar, Inc.*,
722 F.3d 911 (7th Cir. 2013) .................................................................................................6

**Statutes**

815 Ill. Comp. Stat. Ann. 505/10b(1) ....................................................................................2, 6

**Other Authorities**

21 C.F.R. § 10.115(b)(1)...........................................................................................................7

21 C.F.R. § 10.115(c)(1)...........................................................................................................7

21 C.F.R. § 10.115(d)(1)-(3) .....................................................................................................7

21 C.F.R. at § 10.115(g)(1) .......................................................................................................7

81 Fed. Reg. 26236-37 ...........................................................................................................4, 7

Fed. R. Civ. P. 9(b) ...................................................................................................................9

Fed. R. Civ. P. 12(b)(6).............................................................................................................5

This case is about Plaintiffs' dissatisfaction with the need for pet owners to have their veterinarians' authorization and supervision to buy specialized therapeutic foods for their sick pets ("the Prescription Requirement").[1]  In published enforcement guidance about the labeling and marketing of these products, however, the U.S. Food and Drug Administration ("FDA") is clear:  veterinarians—and only veterinarians—should decide when a pet owner should feed these products to a pet with health issues.  If pet owners could buy these foods without a veterinarian's oversight, FDA cautioned, pet owners might become confused, misuse the products, and endanger their pets.  Citing this concern, FDA has concluded that whether therapeutic pet foods are sold "only" or "exclusively" with a veterinarian's supervision continues to be a key factor for the agency to consider in deciding whether to bring an enforcement action.

Plaintiffs are two cat owners.  FAC ¶¶ 62, 67.  They allege that when their cats suffered complications from bladder stones and diabetes, their veterinarians prescribed therapeutic pet foods manufactured by Defendant Hill's Pet Nutrition, Inc. ("Hill's").  *Id.*  Plaintiffs bought the foods from a retailer, Defendant PetSmart, Inc. ("PetSmart").  *Id.*  Without disputing that the foods provided therapeutic benefits, Plaintiffs claim that the Prescription Requirement is unfair and deceptive because, among other things, it is not "legally required," that these products are no different from non-therapeutic pet foods, and that they are misbranded under the Food Drug & Cosmetic Act ("FDCA").  Plaintiffs allege claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and for unjust enrichment.  Despite alleging

---

[1] Defendants adopt Plaintiffs' broad definitions of the terms "Prescription Requirement" and "Prescription Pet Food" solely for purposes of this motion.  Pet food requiring veterinarian authorization and supervision is referred to in a number of ways, including "therapeutic pet food," "veterinarian recommended," "veterinary diets," etc. *See e.g.* Dkt. Nos. 48-3 and 48-4. And Plaintiffs' expansive definition of Prescription Pet Food as "Pet food sold at retail by 'prescription.'" (FAC ¶ 8), coupled with a proposed class of "all" consumers who purchased the products from "any retailer" in Illinois (*Id.* ¶ 77) would drastically inflate this litigation well beyond the named defendants to countless additional unidentified manufacturers and retailers.

1

purchases of only two of Hill's therapeutic pet foods, they seek to represent a class of all Illinois purchasers of "Prescription Pet Food" from "any retailer in Illinois." *Id.* ¶ 77.

Defendants jointly move to dismiss the First Amended Complaint ("FAC") with prejudice. ***First***, Plaintiffs' ICFA claims founder on ICFA's safe harbor, which provides that conduct authorized by regulatory bodies is exempt from liability. 815 Ill. Comp. Stat. Ann. 505/10b(1). There can be no reasonable dispute that FDA wants veterinarians to supervise pet owners in their use of these products, nor that FDA has long known that veterinarians have utilized "prescriptions" as one of a number of permissible *methods* of informing retailers that a given pet owner has permission to buy one of these products. ***Second***, Plaintiffs have failed to state an ICFA claim because their allegations about how they selected the products defeat proximate causation: It was their veterinarians' independent medical judgment that proximately caused the purchases, not any actions or representations by Defendants.

***Third***, Plaintiffs' deception claims fail under Rule 9(b) for failure to allege the following with particularity: how there is a deception; the precise alleged misrepresentation and the context (including, for example, what the veterinarian said); and how or which non-therapeutic pet foods manufactured by Hill's or sold by PetSmart are allegedly the same as the foods prescribed for Plaintiffs' cats with kidney stones and diabetes that Plaintiffs purchased. ***Fourth***, Plaintiffs' unfair practices claim fails because (1) it is simply a reprise of their deficient deception claim, and (2) even if there was a standalone unfair practice theory, Plaintiffs have not alleged what public policy has been offended by the Prescription Requirement, how the Prescription Requirement reflects "immoral" or "unscrupulous" behavior, or how it caused their injury. ***Fifth***, Plaintiffs lack standing to pursue injunctive relief and claims for products they did not purchase. ***Finally***, the unjust enrichment theory falls with the failed ICFA claim.

This case is very similar to a class action case filed in the Northern District of California (three months before this case was filed), also alleging that the Prescription Requirement is deceptive under seven states' consumer protection statutes. *Moore, et al. v. Mar's Petcare US, Inc., et al.* ("*Moore*"), 2017 WL 2931154 (N.D. Cal. July 10, 2017).[2] Last month, Judge Maxine M. Chesney dismissed those claims in their entirety (with leave to amend), based on many of the same arguments presented here. This Court should do the same, but with prejudice.

## BACKGROUND

The FAC hinges on the Prescription Requirement's role—and necessarily, that of veterinarians—in the sale of therapeutic pet foods. Plaintiffs allege that the Prescription Requirement, and marketing claims such as "prescription" and "RX", or "clinical nutrition" and images of a stethoscope, are deceptive because Defendants fail to disclose that:

(a) Prescription Pet Food is not legally required to be sold by prescription; (b) Prescription Pet Food does not contain a drug, medicine or other ingredient that is not also common in non-prescription pet food; (c) Prescription Pet Food does not contain a substance medically necessary to the health of the pet for which it was prescribed; (d) Prescription Pet Food is not materially different than non-prescription pet food; (e) Prescription Pet Food has not been evaluated or approved by the FDA as a drug; and/or (f) Defendant HPN's representations regarding the intended uses and effects of Prescription Pet Food have not been evaluated by the FDA.

FAC ¶¶ 90-91. *See also id.* ¶¶ 36, 58, 73. Rather than allege any express misrepresentations, their theory is that the Prescription Requirement itself, and the labels and other marketing materials, implicitly communicate certain claims to consumers. *Id.* Plaintiffs also claim that the products are "unfairly" sold because they are misbranded in violation of the FDCA, but otherwise reprise their allegations of deception. *See e.g. id.* ¶ 38; *compare* ¶ 36 (allegations of why Prescription Requirement is deceptive), *with* ¶ 58 (same as to why it is unfair), ¶ 99 (asserting "unfair" conduct injures consumers because of above-market prices and because they "did not receive what they expected to receive when they purchased Prescription Pet Food").

---

[2] The *Moore* case includes an antitrust claim and claims against additional defendants.

3

***The Long History of Veterinarian-Authorization.*** Therapeutic pet foods have been sold with veterinary authorizations in the United States for more than fifty years. *See* FAC Ex. 1 ("CPG") at 3, 4. FDA has long been aware of veterinary authorizations, (*id.* at 4) and has never suggested that they are deceptive or unlawful in any respect. Quite the opposite. FDA has long supported the veterinarian's gatekeeping role as a critical way of ***preventing*** consumer misuse. *Id.* In fact, it was because FDA observed a troubling rise in direct consumer sales that it elected to publicize its longstanding enforcement policy and issued draft guidance for public comment. *See* Dkt. No. 48-2 ("2012 Draft Policy"). Historically, FDA noted, the agency had "generally exercised enforcement discretion with regard to these requirements . . . when 1) those products provide nutrients in support of the animal's total required daily nutrient needs, 2) when manufacturers restricted label and labeling claims, and 3) ***distributed the products only through licensed veterinarians***." *Id.* at 4 (emphasis added); *see also id.* at 7.

FDA explained that marketing therapeutic pet foods "directly to pet owners is of concern because many of these products affect physiological processes to extents that may not be tolerated by all animals and/or may not achieve effective treatment." *Id.* at 5. An owner of a diabetic pet (like Plaintiff Land), for example, might mistake how glucose-controlled food fits into a broader treatment plan involving insulin therapy. *Id.* Veterinary oversight mitigates these concerns because FDA "presumes the veterinarian will provide direction to the pet owner for how to use the product" as well as "periodic assessment of the product's effectiveness in both treatment outcome and provision of adequate nutrition for the animal." *Id.*

After receiving and considering public comments, (*see e.g.* Dkt. Nos. 48-3 & 48-4) FDA published the final CPG in April 2016. FAC Ex. 1; *see also* 81 Fed. Reg. 26236-37. FDA continued to observe that pet owners typically "cannot . . . accurately diagnose" the diseases and

conditions that these products support. CPG at 5. FDA reiterated its concern that pet owners might misinterpret therapeutic product label information, including "effectiveness, possible side effects, and contraindications for use." *Id.* "These concerns are reduced," FDA explained, "when such dog and cat food diets are marketed only through and used under the direction of a licensed veterinarian." *Id.* Consistent with past practice, FDA confirmed that it was "less likely to initiate enforcement action against [therapeutic pet foods] when . . . [t]he product is made available to the public *only through licensed veterinarians or through retail or internet sales to individuals purchasing the product under the direction of a veterinarian*," in addition to other factors. *Id.* at 7 (emphasis added).

To be clear: while the CPG does not use the word "prescription," FDA has long known that the words "prescription" or "prescribed" are terms routinely used by veterinarians to convey their authorization or permission to purchase therapeutic pet foods. Comments submitted to FDA on the 2012 Draft Guidance Policy, for example, openly used "prescribed" or "prescription" in reference to veterinary authorizations (*see e.g.* Dkt. Nos. 48-3 at 2, and 48-4). Despite listing ten other factors for consideration in evaluating the labeling and marketing of these foods, FDA did not caution against veterinarians using words like "prescription" or "Rx" or suggest that using these terms when authorizing a pet owner to buy these products from a third party retailer was deceptive, or that pet owners should receive additional disclosures about the word "prescription."

## ARGUMENT

Dismissal is appropriate when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). Claims are facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

5

The Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## I.   FDA'S GUIDANCE TRIGGERS ICFA'S SAFE HARBOR EXEMPTION

Because the Amended Complaint turns entirely on the Prescription Requirement, which FDA "specifically authorizes," this action should be dismissed with prejudice pursuant to ICFA's safe harbor. Section 10b(1) of ICFA exempts from liability "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. Ann. 505/10b(1). This provision recognizes "the need for regulated actors to be able to rely on the directions received from [regulatory] agencies without risk that such reliance may expose them to tort liability," *Price v. Philip Morris, Inc*., 848 N.E.2d 1, 38 (Ill. 2005), and so prevents ICFA from "impos[ing] higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001). Thus, "under Section 10b(1), parties are immune from liability under ICFA 'if the parties are doing something specifically authorized by federal law.'" *Aliano v. Fifth Generation, Inc.*, 2015 WL 5675423, at *4 (N.D. Ill. Sept. 24, 2015) (Der-Yeghiayan, J.) (citing *Bober*, 246 F.3d at 941).

The Section 10b(1) analysis has two prongs: *First*, the regulatory body must be operating under statutory authority, and *second*, the activity at issue must be "specifically authorized by laws administered" by the regulatory body. *Price*, 848 N.E.2d at 36 (quoting 815 Ill. Comp. Stat. Ann. 505/10b(1)). As to the second prong, the Illinois Supreme Court has held that formal rulemaking is *not* necessary to create the "laws administered" by the regulatory body. *Id.* at 39, 41. Rather, "informal regulatory activity," such as consent orders entered into by other parties, or Federal Reserve Board Staff interpretations, will suffice. *Id.* at 42, 46. In *Price*, for example, the Court held that consent orders between regulators and *non*-party companies in the same

industry exempted a defendant from ICFA liability even though "the consent order may be enforced only against the party who agreed to the terms of the order." *Id.* at 43-44, 46.

Here, both 10b(1) prongs apply. On the first prong, Plaintiffs acknowledge that therapeutic pet foods are subject to FDA's authority and that FDA issued its CPG pursuant to its statutory authority. FAC ¶¶ 15, 46-55. On the second prong, in contrast to the Plaintiffs' core allegation that the Prescription Requirement is "deceptive" and "unfair" (*id.* ¶¶ 25, 60), FDA specifically identified veterinary authorization as a favorable enforcement factor. The CPG is squarely in the category of "informal regulatory activity" that qualifies for ICFA's safe harbor.

When FDA published the 2012 Draft Policy for public comment, and later issued the final CPG, it did so "consistent with FDA's good guidance practices regulation." 81 Fed. Reg. 26237 (characterizing the CPG as "level 1"). That regulation explains: "Guidance documents are documents prepared for FDA staff . . . and ***the public*** that describe the agency's interpretation of or policy on a regulatory issue."[3] 21 C.F.R. § 10.115(b)(1) (emphasis added); *see also id.* § 10.115(c)(1) (defining "Level 1 guidance documents" as those that, *inter alia* "set forth initial interpretations of statutory or regulatory requirements" or set forth non-minor "changes in interpretation or policy"); *id.* at § 10.115(g)(1) (outlining public comment procedures for Level 1 guidance documents). "FDA employees may depart from guidance documents only with appropriate justification and supervisory concurrence." *Id.* § 10.115(d)(1)-(3).

Plaintiffs fault Defendants because the CPG does not use the word "prescription" or the symbol "Rx." FAC ¶¶ 52-53. But FDA has long known about the use of "prescription" as a method veterinarians use to authorize pet owners to buy these foods and has never once

---

[3] Plaintiffs are therefore wrong to allege that FDA only issued the CPG to guide its staff (FAC ¶ 46) and that it is strictly about "the allocation of enforcement resources" (*Id.* ¶ 49). It is also nonsensical to assert that Defendants should brush aside guidance about the role of veterinarians, issued via public notice-and-comment, by one of their chief regulators.

suggested that such terms are deceptive, including in the CPG addressing the "Labeling and Marketing" of these products (*see supra* at 4-5). Because FDA "specifically authorized" the conduct at the heart of this complaint, the ICFA claims should be dismissed with prejudice.

## II. PLAINTIFFS FAIL TO PLEAD PROXIMATE CAUSATION

Plaintiffs have also failed to plead facts alleging proximate causation. ICFA "imposes an obligation upon a private individual seeking actual damages under the Act to demonstrate" that the unfair or deceptive practice at issue "proximately caused those damages in order to recover for his injury." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155 (Ill. 2002) (citation and quotation omitted).[4] Plaintiffs plead intervening events that break the chain of causation. While Plaintiffs say that they "would not have purchased the Prescription Pet Food . . . absent Defendant's deceptive conduct and unfair practices," (FAC ¶ 75), *other* factual allegations bely this conclusory assertion. Specifically, they allege purchasing the products after their veterinarians prescribed the foods for their sick pets. *Id.* ¶¶ 62-71. There is simply no plausible inference that Plaintiffs purchased the foods for any other reason than their veterinarians' medical advice.

This case is like *Sidney Hillman Health Center. of Rochester v. Abbott Laboratories & Abbvie Inc.*, 192 F. Supp. 3d 963, 972 (N.D. Ill. 2016), where the court dismissed a RICO claim for failure to adequately plead proximate cause. Several third-party payors sued Abbott Labs alleging that it had promoted a drug, Depakote, for off-label use to physicians, which led to the plaintiffs' overpayments. Rejecting liability, the court held that the "intervening events between the alleged misrepresentations and the Funds' alleged overpayments for Depakote—doctors' independent medical decisions to prescribe Depakote over other medications and patients'

---

[4] A plaintiff "must actually be deceived by a statement or omission that is made by the defendant." *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009). *See also Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1003 (N.D. Ill. 2016).

decisions to fill those prescriptions, for example—make the causal chain too attenuated to establish the required proximate causation." *Id.* at 970-71. Thus, "establishing damages would require individualized inquiries into the prescribing physicians' and individual patients' decisionmaking processes." *Id.* at 971. The plaintiffs could not overcome "otherwise intervening factors—such as a physician's independent medical judgment or a patient's decisionmaking—[that] interrupt the chain of causation." *Id.* at 970.[5] And, in *Moore*, the defendants argued that nearly identical allegations of a veterinarian "prescribing" therapeutic pet foods broke the causal chain (*Moore*, Dkt. Nos. 93, 104), and proximate cause was one reason the district court dismissed the consumer fraud claims. *See Moore¸* 2017 WL 2931154, at *2.

The same is true here. Plaintiffs admit that they bought therapeutic pet foods after receiving a "prescription" from their veterinarians, breaking any alleged chain of causation.

## III. PLAINTIFFS' DECEPTIVE PRACTICES CLAIMS OTHERWISE FAIL

Plaintiffs' ICFA claims also fail to satisfy Rule 9(b)'s requirement to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Regardless of how they are framed, "allegations of fraud" and not just "claims of fraud" are subject to the Rule 9(b)'s heightened pleading standard. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Plaintiffs alleging deception must "identify the statement and set forth why it is false." *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 860 (N.D. Ill. 2006) (citation omitted); *see also Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990) (claims "failed to state with particularity how any prospectus was false and misleading"). Rule 9(b) "assure[s] that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

---

[5] *See also UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 134 (2d Cir. 2010) (no causation where liability "rest[ed] on the independent actions of third and even fourth parties").

Averments of fraud that do not meet Rule 9(b) "must be stricken." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1040 (N.D. Ill. 2007). Plaintiffs' ICFA deception claims "sound[] in fraud" (*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted)), as they are premised on alleged "deception[,] . . . false representations and omissions of material facts." FAC ¶1; *see Strama v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 561936, at *3 (N.D. Ill. Feb. 12, 2016) (Der-Yeghiayan, J.) (same). As the court found in *Moore*, none of Plaintiffs' deception claims meet this standard. *See* 2017 WL 2931154, at *2.

Plaintiffs' theory that Defendants have misled them by "repeatedly represent[ting]" that the products in question "require[] a prescription" for purchase when such products are "not legally required to be sold by prescription" fails under Rule 9(b). FAC ¶¶ 26, 36(a). They have not alleged or explained how the alleged lack of statutory requirement for a "prescription" is deceptive. Plaintiffs ignore that FDA has repeatedly embraced the veterinarian's oversight role because it reduces the likelihood that a pet owner will misuse a product and unintentionally harm their pet. *See supra* pp. 3-5. Plaintiffs cannot avoid FDA's guidance by cherrypicking from it.

Plaintiffs need far more than conclusory allegations to satisfy Rule 9(b). They offer none. **First**, Plaintiffs assert that the products "contain[] no drug or other ingredient that is not also common in non-prescription pet food," FAC ¶ 34, and therefore "there is no material difference" between them. *Id.* ¶ 35.[6] But they have not specifically alleged **facts** supporting that belief. These conclusory allegations are not enough because they lack "grounds to corroborate [Plaintiffs'] suspicions." *See Pirelli*, 631 F.3d at 446. Plaintiffs do not allege that the products

---

[6] Plaintiffs also allege that Hill's markets *non*-therapeutic pet foods that are marketed with the same kinds of claims as foods sold with the Prescription Requirement. FAC ¶ 33. This non-sequiteur also fails Rule 9(b). Plaintiffs do not cite a single example of these supposedly interchangeable foods, much less allege with any specificity why they believe a non-therapeutic food marketed with (unidentified) similar claims would support Tarik's urinary condition or Chief's diabetes like the products their veterinarians prescribed.

were ineffective, or lacked the attributes or ingredients noted on the labels. Far from it.[7] Plaintiffs have not alleged that they "received anything other than what [they] expected to receive:" specific therapeutic pet foods, bought at their veterinarians' direction, and intended to help manage their pets' particular medical conditions. *Oliveira*, 776 N.E.2d at 163 (deceptive gasoline marketing claims failed where plaintiff did not allege receiving anything other than what he expected, "*i.e.*, a certain amount of gasoline, with a certain octane level, for the price listed on the pump").

**Second**, Plaintiffs omit key allegations about the circumstances under which they learned about their pets' therapeutic food. While they allege seeing the bag labels "stating that the cat food was 'Prescription Diet,'" as well as the alleged "separate section of [PetSmart's] store for prescription cat food" sometime "before" the first time they purchased the product, (FAC ¶¶ 66, 71) they do not state **when** they observed those statements, and if others, **which** others, nor do they allege that any such statements influenced their decision to purchase the products.[8] *See Aliano,* 2015 WL 5675423, at *3 (allegations that plaintiff viewed websites and product labels before purchase failed Rule 9(b) because he did not "include more specific information . . . such as which websites were visited, when he visited the websites, who advertised on such websites, and the exact contents of the statements he allegedly read on such websites"); *Moore¸* 2017 WL

---

[7] Plaintiff Vanzant's cat, Tarik, for example, "underwent emergency surgery for bladder stones." Compl. ¶ 62. Her veterinarian "wrote a prescription" for Hill's® Prescription Diet® c/d Multicare Feline Bladder Health Cat Food. *Id*. Ms. Vanzant does not allege that the product failed to help support Tarik's urinary issues; instead, she alleges buying it for more three years. *Id*. ¶ 65. Nor does Plaintiff Land allege that the Hill's® Prescription Diet® m/d Feline Glucose / Weight Management Cat Food failed to benefit her cat Chief's diabetes and diabetic neuropathy; like Ms. Vanzant, she alleges that she kept buying the product for years. *Id*. ¶¶ 67, 70.

[8] Ms. Land's vague allegation (FAC ¶ 71) that she "saw marketing materials from [Hill's] indicating that the cat food was prescription food meant to treat or control diabetes" should be stricken. She omits "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta*, 761 F.3d at 737.

2931154, at *2 (dismissing Prescription Requirement deception claims under Rule 9(b) for want of "identification of the false or misleading statement, by whom it was communicated, to whom it was communicated, and "what is false or misleading about [the] statement").

And perhaps most critically, each Plaintiff omitted any details of the discussion they had with their veterinarians about why these products were a medically appropriate choice for their cats' conditions. Indeed, several of the marketing statements that Plaintiffs challenge direct consumers to *"[a]sk your vet"* how the foods can help a dog or cat's condition, making it abundantly clear that the veterinarian is the critical source of information about the products, ***not*** the labels. FAC ¶ 28 (emphasis added). The FAC is devoid of the context necessary to assess whether there was anything remotely deceptive about each veterinarian "prescribing" the foods.

***Third,*** Plaintiffs do not explain how (1) Defendants could comply with the CPG with something other than requiring a veterinary prescription, or (2) Plaintiffs would not be deceived by an alternative veterinary authorization process. For example, under the CPG, a veterinarian might determine that a diabetic cat like Chief would benefit from a therapeutic diet that controls glucose as part of its treatment plan. Plaintiffs do not plausibly explain why a written authorization to the pet owner to purchase that food through a retailer is deceptive and inconsistent with the CPG, whether denominated a "prescription," or something else. Indeed, Plaintiffs themselves recognize that the word "prescription" might never be used at all—when a veterinarian sells the products directly to the pet owner. *See* FAC ¶ 13. Thus it is not the ***label*** attached to the prescription, but the ***function*** of the veterinarian challenged here—precisely the function reflected in FDA's CPG. Whether called an authorization, a prescription, or something else, Plaintiffs' theory is that veterinarians should ***not*** do the job FDA wants them to do.

## IV. PLAINTIFFS' UNFAIR PRACTICES CLAIMS OTHERWISE FAIL

Plaintiffs' claims based on unfair practices also cannot survive. Most fundamentally, the

claims retread their deception claims. *See supra* 9-12. They are therefore subject to the same stringent pleading standards under Rule 9(b), and fall for the same reasons. *Pirelli*, 631 F.3d at 446-47 (denominating a deception claim "unfair" does not change gravamen of claim). But even if the "unfair" claims are considered separately, they fail under Illinois's three part standard.

In considering an ICFA unfair practices claim, courts look at three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (2002). Conduct, which has not previously been held unlawful, violates public policy "if it violates a standard of conduct set out by an existing statute or common law doctrine that typically governs such situations." *Garrett v. RentGrow, Inc.*, 2005 WL 1563162, at *3 (N.D. Ill. July 1, 2005). The 'immoral, unethical, oppressive, or unscrupulous' inquiry turns on whether the conduct is "so oppressive as to leave the consumer with little alternative except to submit to it. . . . [T]his element is not satisfied if a consumer can avoid the defendant's practice by seeking an alternative elsewhere." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) (citation and quotation omitted). Finally, the consumers' ICFA injury will be 'substantial' if is it is "(1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016) (citation and quotation omitted).

Plaintiffs cannot show that the Prescription Requirement is "against public policy" when the CPG endorses it.[9] Nor can they show "immoral, unethical, oppressive or unscrupulous"

---

[9] While Plaintiffs assert generalized unfair conduct due to alleged FDCA misbranding, their allegations make clear that they are not suing because these products are on the market or because the products did not deliver therapeutic benefits. Rather, they allege paying too much

13

conduct or that the alleged conduct caused "substantial" injury. Plaintiffs allege that Defendants market "non-prescription pet foods, which are marketed to treat, mitigate, cure or prevent the same of similar conditions as Prescription Pet Food" and that those (unnamed) products are "not materially different" from non-therapeutic foods. FAC ¶¶ 57(4), 91(d). Accepting those allegations as true (and they are not), Plaintiffs could have "avoid[ed]" the Prescription Requirement "by seeking an alternative elsewhere." *Phillips*, 173 F. Supp. 3d at 743.

## V.     PLAINTIFFS' OTHER CLAIMS FAIL.

**Injunctive relief.** A plaintiff seeking injunctive relief must show a "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In applying this principle to consumer products, the plaintiff "cannot rely on the idea that other Illinois consumers may be deceived by [the defendant's] label or advertisements in order to establish that she has standing to pursue injunctive relief." *Mihalich v. Johnson & Johnson*, 2016 WL 5106970, at *5 (S.D. Ill. Sept. 20, 2016). If Plaintiffs here cannot show that they ***themselves*** are likely to be harmed "in the future," then injunctive relief is not available. *Camasta*, 761 F.3d at 740. They cannot. They allege ***no*** intent to purchase therapeutic pet foods again; neither has purchased the products since 2016. FAC ¶¶ 65, 70. Thus, they cannot seek injunctive relief on any of their claims. *Camasta*, 761 F.3d at 741; *see Moore¸* 2017 WL 2931154, at *2 (dismissing injunctive relief for failure to adequately plead facts "demonstrating plaintiffs' intent to purchase the accused products in the future despite their allegation that such products are more expensive than products having the same composition").

**Unpurchased products.** Plaintiffs lack standing for unpurchased products. They claim

due to the Prescription Requirement and that they "did not receive what they expected to receive." In other words, their injury is not caused by the alleged misbranding. *E.g.* FAC ¶ 99. And while Plaintiffs assert that "several" CPG factors have been "disregard[ed]," they have not specified any facts to support that conclusory statement. *See* FAC ¶ 55.

14

to represent a sweeping statewide class of "all" similarly situated purchasers of "Prescription Pet Food" from "any" retailer in Illinois. FAC ¶ 77. While Plaintiffs identify 14 distinct Hill's therapeutic products, they only allege purchasing two. *Compare id.* ¶ 27, *with* ¶¶ 62, 67. Plaintiffs need an "injury in fact" as to "*each* claim" that they "seek[] to press." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added). Courts in this district bar plaintiffs from "attempting to 'acquire [standing] through the back door of a class action,'" and have limited putative class claims where, as here, plaintiffs did not purchase the challenged products.[10] *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *4 (N.D. Ill. Sept. 22, 2016) (citing *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002)).

**Unjust enrichment.** "[W]here an unjust enrichment claim is 'based on the same conduct underlying an [ICFA] claim,' the two claims fall together." *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 817 (N.D. Ill. 2013) (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011)); *Aliano*, 2015 WL 5675423, at *5.

## CONCLUSION

Having already amended their Complaint in response to Defendants' original motion to dismiss raising similar arguments, the case should now be dismissed with prejudice. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012).

---

[10] *See also Padilla v. Costco Wholesale Corp.*, 2012 WL 2397012, at *2-3 (N.D. Ill. June 21, 2012). Some courts apply a "substantial similarity" test considering the physical similarities of the purchased and unpurchased products and of the alleged misrepresentations. *Gubala v. Allmax Nutrition, Inc.*, 2015 WL 6460086, at *3 (N.D. Ill. Oct. 26, 2015). Plaintiffs make no specific allegations about any unpurchased product's characteristics or marketing, but broadly allege that they are "the same across the board." FAC ¶¶ 37, 61. Because other allegations undercut this contention, *i.e.* that the products manage medical conditions as varied as "skin/food sensitivity" and "joint care" (*id.* ¶ 27), claims for unpurchased products should be dismissed. *See Moore¸* 2017 WL 2931154, at *2; *Padilla*, 2012 WL 2397012, at *3 (dismissing claims for "different products that have different product formulations and labels").

Dated: August 1, 2017                    Respectfully submitted,

                                         _____/s/ John C. Gekas_____
                                         John C. Gekas
                                         ARNSTEIN & LEHR LLP
                                         161 N. Clark, Suite 4200
                                         Chicago, IL 60606
                                         Telephone: (312) 876-7124
                                         Facsimile: (312) 876-7313
                                         E-mail: jgekas@arnstein.com

                                         Richard B. Goetz (*pro hac vice*)
                                         O'MELVENY & MYERS LLP
                                         400 South Hope Street
                                         18th Floor
                                         Los Angeles, CA 90071
                                         Telephone: (213) 430-6000
                                         Facsimile: (213) 430-6407
                                         E-mail: rgoetz@omm.com

                                         Hannah Y. Chanoine (*pro hac vice*)
                                         O'MELVENY & MYERS LLP
                                         Times Square Tower
                                         7 Times Square
                                         New York, NY 10036
                                         Telephone:  (212) 326-2000
                                         Facsimile:  (212) 326-2061
                                         E-mail:  hchanoine@omm.com

                                         ***Attorneys for Defendant Hill's Pet Nutrition, Inc.***

                                         _____/s/ Zaldwaynaka Scott_____
                                         Zaldwaynaka Scott
                                         FOLEY & LARDNER LLP
                                         321 North Clark Street, Suite 2800
                                         Chicago, IL 60654
                                         Telephone: (312) 832-5181
                                         Facsimile:  (312) 832-4700

                                         Eileen R. Ridley
                                         Alan R. Ouellette
                                         FOLEY & LARDNER LLP
                                         555 California Street, Suite 1700
                                         San Francisco, CA 94104-1520
                                         Telephone:  (415) 434-4484

Facsimile:  (415) 434-4507

James T. McKeown
FOLEY & LARDNER, LLP
777 E. Wisconsin Ave.
Milwaukee, WI 53202
Telephone:  (414) 271-2400

**Attorneys for Defendant PetSmart, Inc.**

**CERTIFICATE OF SERVICE**

I, John C. Gekas, an attorney, hereby certify that I caused the foregoing document to be filed via the Court's CM/ECF system and served on all counsel of record registered to receive such service.

 /s/ John C. Gekas