**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| HOLLY BLAINE VANZANT, and SHERRY NEVIUS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 1:17 cv 2535 |
| | ) ) | Hon. Jorge L. Alonso |
| HILL's PET NUTRITION INC., and PETSMART, INC., | ) ) ) | **JURY DEMAND** |
| Defendants. | ) ) ) | |

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiffs ("Plaintiffs or "Class Representatives"), individually and on behalf of others similarly situated, file this Second Amended Class Action Complaint against Defendants Hill's Pet Nutrition, Inc. ("HPN") and PetSmart, Inc. ("PetSmart") (collectively "Defendants") and allege as follows:

**INTRODUCTION**

1.    Plaintiffs bring this class action on behalf of themselves and all other similarly situated Illinois consumers for, *inter alia*, damages, injunctive relief, and all other relief this Court deems just and proper based on Defendants' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*. Defendants HPN and PetSmart engaged in deception by making false representations and omissions of material facts in manufacturing, distributing, marketing, advertising, labeling, and/or selling "prescription" pet food at above-market prices. In addition, Defendants engaged in unfair business practices in violation of the ICFA by manufacturing, distributing, marketing, advertising, labeling, and/or

selling "prescription" pet food in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA"). Defendants' actions caused reasonable consumers, including Plaintiffs, to overpay and make purchases they otherwise would not have made without Defendants' deceptive and unfair business practices.

## PARTIES

2.      Plaintiff / Class Representative Holly Blaine Vanzant ("Ms. Vanzant") is a resident of Cook County, Illinois.

3.      Plaintiff / Class Representative Sherry Nevius ("Ms. Nevius") is a resident of McLean County, Illinois.

4.      Defendant HPN is a Delaware corporation with its principal place of business in Topeka, Kansas.

5.      Defendant PetSmart is a Delaware corporation with its principal place of business in Phoenix, Arizona.

## JURISDICTION AND VENUE

6.      This action was originally filed in the Circuit Court of Cook County, Illinois, Chancery Division. Defendants HPN and PetSmart removed this case to the United States District Court for the Northern District of Illinois Court on April 3, 2017. Jurisdiction is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1332(d) because this is a civil action where (a) members of the putative class of plaintiffs are citizens of a different State from a defendant, i.e., there is minimal diversity; (b) the number of members of all proposed plaintiff classes in the aggregate is not less than 100; and (c) the amount in controversy for the aggregated claims of putative class members exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B), (d)(6).

7.      Venue is appropriate in the Northern District of Illinois because this case was removed to the district court of the United States for the district and division embracing the place the original action was pending (in Cook County, Illinois). 28 U.S.C. § 1441(a). In addition, venue is appropriate in the Northern District of Illinois because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### A. Defendants Manufacture, Distribute, Market, Label And/Or Sell Prescription Pet Food.

8.      Pet food sold at retail by "prescription" is marketed and sold across the United States, including in Illinois.

9.      Defendant HPN is in the business of manufacturing, distributing, marketing, labeling, and selling pet food pursuant to a "prescription" under the brand or label "Prescription Diet®." "Prescription Diet®" pet food is referred to herein as "Prescription Pet Food". HPN markets, distributes, and sells Prescription Pet Food to consumers in Illinois. Defendant HPN also manufactures, distributes, markets, labels, and sells several lines of non-prescription pet food to consumers in Illinois.

10.     Defendant PetSmart is the largest pet goods retailer in the United States. A majority of its nationwide stores include an onsite Banfield Pet Hospital. PetSmart markets and sells Prescription Pet Food to consumers in Illinois who present a prescription from a veterinarian. PetSmart also sells other non-prescription cat and dog food manufactured by Defendant HPN and other pet food manufacturers.

11.     PetSmart also owned pet360.com, an e-commerce business that sold pet food. Through pet360.com, for several years, PetSmart sold Prescription Pet Food to consumers in Illinois who presented a prescription from a veterinarian.

3

12.     Prescription Pet Food is prescribed by a veterinarian, similar to a drug that a veterinarian would prescribe for a cat or dog.

13.     To fulfill this prescription, a veterinarian may (a) sell Prescription Pet Food directly to the retail consumer with whom the veterinarian-client-patient relationship exists or (b) provide the consumer a written prescription that can be presented at a business that sells Prescription Pet Food, such as PetSmart stores.

14.     Prescription Pet Food may be prescribed only for a finite period of time or may be prescribed indefinitely, such as for the remainder of the pet's life.

**B.  Each Defendant Has Engaged In Deceptive Conduct In Violation Of The ICFA.**

15.     The Food and Drug Administration ("FDA") regulates foods and drugs, including pet foods and drugs.

16.     The FDA does not require that Prescription Pet Food be sold by prescription.

17.     No other governmental body or agency requires that Prescription Pet Food be sold by prescription.

18.     Prescription Pet Food:

a.  has not been subjected to the FDA process for evaluating the quality of drug ingredients and manufacturing processes;

b.  has not been subjected to the FDA process for evaluating the efficacy of claims and propriety of representations;

c.  does not contain any drug approved by the FDA; and

d.  does not bear the mandatory legend borne by those items required by the FDA to be sold by prescription (for example, "Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.")

4

19.     Each Defendant restricts the sale of Prescription Pet Food to those with a prescription from a veterinarian. Thus, retail consumers, including Plaintiffs, cannot purchase Prescription Pet Food without a prescription from a veterinarian.

20.     The prescription required to purchase Prescription Pet Food is hereafter referred to as the "Prescription Requirement."

21.     Prescription Pet Food is not required to be sold by prescription other than as imposed by Defendant HPN and those acting in concert with Defendant HPN to advance and perpetuate the Prescription Requirement, including Defendant PetSmart.

22.     Defendant HPN imposed the Prescription Requirement because it profits from selling Prescription Pet Food at above-market prices.

23.     Defendant PetSmart adheres to, advances, and perpetuates the Prescription Requirement for Prescription Pet Food by restricting the sale of Prescription Pet Food to those with a prescription from a veterinarian because it profits from selling Prescription Pet Food at above-market prices.

24.     The Prescription Requirement enables Defendants HPN and PetSmart to market and/or sell Prescription Pet Food at above-market prices that would not otherwise exist without the Prescription Requirement.

25.     The Prescription Requirement is false, deceptive, and misleading. Each Defendant participates in this deceptive conduct by imposing, adhering to, advancing, and/or perpetuating the Prescription Requirement for Prescription Pet Food.

26.     Defendants HPN and PetSmart repeatedly represent to consumers, including Plaintiffs, that Prescription Pet Food requires a prescription in the distribution, marketing, advertising, labeling, and/or sale of Prescription Pet Food pursuant to the Prescription

Requirement. But that representation is false because Prescription Pet Food is not legally required to be sold by prescription.

27.     HPN sells a "Prescription Diet" line of food that is Prescription Pet Food. This Prescription Pet Food is purportedly meant to treat, mitigate, or prevent conditions, including, but not limited to, those related to the following: "weight management," "digestive care," "skin/food sensitivities," "urinary care," "kidney care," "dental care," "aging care," "glucose management," "heart care," "joint care," "liver care," "skin sensitivity," "thyroid care," and "urgent care."

28.     HPN represents: "No matter what health issues your dog is facing, our alliance with veterinarians puts us in a unique position to find a solution.  Ask your vet how the Prescription Diet® dog foods can help his weight, mobility, kidney, digestive, urinary and skin and coat health." HPN also represents: "No matter what health issues your cat is facing, our alliance with veterinarians puts us in a unique position to find a solution. Ask your vet how Prescription Diet® can help your cat's weight, kidney, digestive and urinary health." In addition, bags and cans of HPN "Prescription Diet" dog and cat food represent that the contents are "Clinical Nutrition" and bear an image of a stethoscope.

29.     On PetSmart's website, for several years, PetSmart designated Prescription Pet Food with the language "RX Required." For example, for HPN Prescription Diet i/d Canine Gastrointestinal Health Dog Food and HPN Prescription Diet c/d Multicare Feline Bladder Health Cat Food, *inter alia*, PetSmart represented that "this brand of food requires a vet prescription. Product is only available for purchase in our PetSmart stores or online at our Pet360 Pharmacy site." PetSmart included a link entitled "shop pet360 pharmacy," which directed consumers to its pet360.com website when the link was activated.

6

30.　On its pet360.com website, PetSmart designated Prescription Pet Food with an "Rx" symbol and represented "this item is an Rx Food or medication and requires a prescription. Once you place the order, the Pet360 Pharmacist will work directly with your veterinarian to verify the prescription and dosage information."

31.　PetSmart also advances and perpetuates the false and misleading Prescription Requirement by requiring consumers, including Plaintiff Vanzant, to obtain a prescription card from PetSmart's onsite veterinarian – Banfield Pet Hospital. PetSmart requires consumers, including Plaintiffs, to present their pet's prescription card, which includes an RX # and RX date, to the cashier in order purchase Prescription Pet Food in PetSmart stores.

32.　At all relevant times, each Defendant knew that Prescription Pet Food is not legally required to be sold by prescription. Accordingly, each Defendant knew that their repeated representations that Prescription Pet Food is required to be sold by prescription were false.

33.　Each Defendant manufactures, markets, labels, and/or sells one or more non-prescription pet foods, which are marketed to treat, mitigate or cure the same or similar conditions as Prescription Pet Food and are sold at significantly lower prices than Prescription Pet Food.

34.　The Prescription Pet Food manufactured, marketed, and/or sold by Defendants contains no drug, medicine or other ingredient that is not also common in non-prescription pet food.

35.　There are no material differences between Prescription Pet Food and non-prescription pet food except for the Prescription Requirement in order to purchase Prescription Pet Food. To the extent there are any differences, they are not sufficient to explain the price disparity between Prescription Pet Food and non-prescription pet food.

36.     By manufacturing, marketing, and/or selling Prescription Pet Food pursuant to the false and misleading Prescription Requirement, Defendants HPN and PetSmart engaged in deception by omitting the following material facts: (a) Prescription Pet Food is not legally required to be sold by prescription; (b) Prescription Pet Food does not contain a drug, medicine or other ingredient that is not also common in non-prescription pet food; (c) Prescription Pet Food does not contain a substance medically necessary to the health of the pet for which it was prescribed; (d) Prescription Pet Food is not materially different than non-prescription pet food; (e) Prescription Pet Food has not been evaluated or approved by the FDA as a drug; and/or (f) Defendant HPN's representations regarding the intended uses and effects of Prescription Pet Food have not been evaluated by the FDA. The forgoing omissions are omissions of material fact because Plaintiffs would have acted differently had they been aware of these facts, and because the facts concerned the type of information upon which Plaintiffs and other reasonable consumers would be expected to rely in making their decisions to purchase Prescription Pet Food.

37.     While HPN and PetSmart distribute, market, label, and/or sell a variety of different types of prescription cat and dog food products that fall within the definition of Prescription Pet Food, the characteristics of these products are substantially similar because Defendant HPN's and PetSmart's false representations and omissions of material fact are the same across the board for all Prescription Pet Food. In addition, the products themselves are substantially similar because all Prescription Pet Food marketed and sold by HPN and PetSmart is marketed to diagnose, cure, mitigate, treat, or prevent diseases or other conditions, yet none of this Prescription Pet Food: (a) contains a drug, medicine or other ingredient that is not also common in non-prescription pet food; (b) contains a substance medically necessary to the health of the pet for which it was prescribed; and/or (c) is materially different than non-prescription pet food.

**C. Each Defendant Has Engaged In Unfair Practices In Violation Of The ICFA.**

38.     Defendants HPN and PetSmart have manufactured, marketed, labeled, and/or sold adulterated and misbranded substances to consumers by failing to comply with the regulatory requirements of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA").

39.     Under the FDCA, the term "drug" means, *inter alia*, "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals." 21 U.S.C. § 321(g)(1).

40.     Under the FDCA, the term "new animal drug" means, any drug (as that term is defined in the FDCA "intended for use for animals other than man . . . the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof." 21 U.S.C. § 321(v)(1).

41.     Prescription Pet Food falls within the statutory definitions of "drug" and "new animal drug" under the FDCA because it is marketed to diagnose, cure, mitigate, treat, or prevent diseases in animals.

42.     Pursuant to the FDCA, in general, new animal drugs are unsafe unless they have an approved application, a conditional approval, or an index listing.

43.     None of the Prescription Pet Food manufactured, marketed, labeled, and/or sold by Defendants HPN and PetSmart is an approved or listed new animal drug. Thus, Prescription Pet Food is adulterated and misbranded under the FDCA and its introduction into interstate commerce is a prohibited act under the FDCA.

44.     The FDCA requires that all drug manufacturers register and list drugs with the Food and Drug Administration ("FDA").

45.     None of the Prescription Pet Food manufactured, marketed, labeled, and/or sold by Defendants HPN and PetSmart complies with the drug registration and listing requirements of the FDCA.  Thus, Prescription Pet Food is further misbranded under the FDCA and its introduction into interstate commerce is a prohibited act under the FDCA.

46.     Because Prescription Pet Food falls within the statutory definition of a "drug" and a "new animal drug" under the FDCA, Defendant HPN has manufactured, marketed, labeled, and sold adulterated and misbranded substances in violation of the FDCA and Defendant PetSmart has marketed and sold adulterated and misbranded substances in violation of the FDCA.

47.     The FDA has issued a non-binding Compliance Policy Guide (the "CPG"), attached hereto as Exhibit 1, to its staff on how to address dog and cat food diets that are labeled and/or marketed as intended for use to diagnose, cure, mitigate, treat, or prevent diseases ("treat or prevent disease") and are also labeled and/or marketed to provide all or most of the nutrients in support of meeting the animal's total required daily nutrient requirements by serving as the pet's sole diet.

48.     The CPG recognizes that dog and cat food diets intended to treat or prevent disease, but which are not approved as new drugs, "have not been evaluated by FDA for safety, efficacy, or nutritional adequacy."

49.     The CPG provides a clear route to compliance – Defendants HPN and PetSmart could submit Prescription Pet Food at issue in this lawsuit for FDA approval and otherwise comply with the laws and regulations pertaining to prescription products. But they have not done so.

50.     The CPG is about illegal conduct – including conduct such as the violations of the FDCA by Defendants HPN and PetSmart as alleged herein. More importantly, the CPG about the allocation of enforcement resources in light of such illegal conduct.

51.     The CPG "does not establish any rights for any person and is not binding on the FDA or the public." Instead, it provides the current thinking of the FDA on the topic of labeling and marketing of dog and cat food diets intended to treat or prevent disease.

52.     The CPG states that "one of the factors FDA will consider in exercising enforcement discretion is whether the product is made available to the public exclusively through licensed veterinarians or through retail or internet sales to individuals purchasing the product under the direction of a veterinarian."

53.     But the CPG does not use the word "prescription" or the symbol "Rx." And it does not indicate that involvement of a veterinarian makes HPN's and PetSmart's conduct in manufacturing, marketing, labeling, and/or selling Prescription Pet Food lawful.

54.     Neither the CPG, nor the FDA, specifically authorizes HPN or PetSmart to impose the Prescription Requirement for Prescription Pet Food, to label or market Prescription Pet Food as "Prescription Diet," or to label or market Prescription Pet Food as "RX Required" or "Rx Food or medicine."

55.     The CPG does not use the statutory language that describes a legal prescription requirement for veterinary prescription drugs under 21 U.S.C. § 353(f) (stating that certain drugs "shall be dispensed only by or upon the lawful written or oral order of a licensed veterinarian in the court of the veterinarian's professional practice.").

56.     The CPG only indicates that the FDA is less likely to initiate enforcement action against dog and cat food products intended to be fed as the pet's sole diet that claim to treat or

prevent disease when the eleven factors set forth in the CPG are present. HPN and PetSmart disregard several of those eleven factors.

57.     HPN's and PetSmart's conduct in manufacturing, marketing, labeling, and/or selling Prescription Pet Food is against public policy because it violates a standard of conduct contained in an existing statute – the FDCA.

58.     HPN's and PetSmart's conduct in manufacturing, marketing, labeling, and/or selling Prescription Pet Food is immoral, unethical, oppressive, or unscrupulous because these Defendants charge above-market prices for Prescription Pet Food despite the fact that: (1) they are selling adulterated and misbranded substances in violation of the FDCA; (2) Prescription Pet Food is not legally required to be sold by prescription; (3) Prescription Pet Food contains no drug, medicine or other ingredient that is not also common in non-prescription pet food; and/or (4) they manufacture, market, and/or sell one or more non-prescription pet foods, which are marketed to treat, mitigate, cure or prevent the same or similar conditions as Prescription Pet Food and are sold at significantly lower prices than Prescription Pet Food.

59.     When Plaintiffs purchased Prescription Pet Food, as reasonable consumers, they expected to receive a substance that: (a) is legally required to be sold by prescription; (b) contains a drug, medicine or other ingredient that is not common in non-prescription pet food; (c) is medically necessary to the health of the pet for which it was prescribed; (c) has been evaluated and approved by the FDA as a drug; and/or (d) as to which Defendant HPN's representations regarding intended uses and effects have been evaluated by the FDA. But Plaintiffs did not receive such a substance when they purchased Prescription Pet Food.

60.     HPN's and PetSmart's conduct has caused substantial harm to consumers, including Plaintiffs, because Plaintiffs and other Illinois consumers paid above-market prices for

Prescription Pet Food – many for a significant period of time – and because Plaintiffs did not receive what they expected to receive when they purchased Prescription Pet Food.

61.     Accordingly, the manufacture of, marketing, labeling, and sale of Prescription Pet Food by HPN and PetSmart constitutes an unfair business practice in violation of the ICFA.

62.     While HPN and PetSmart distribute, market, label, and/or sell a variety of different types of prescription cat and dog food products that fall within the definition of Prescription Pet Food, the characteristics of these products are substantially similar because Defendant HPN's and PetSmart's conduct in manufacturing, marketing, labeling, and/or selling Prescription Pet Food in violation of the FDCA is the same across the board for all Prescription Pet Food. In addition, the products themselves are substantially similar because all Prescription Pet Food marketed and sold by HPN and PetSmart is marketed to diagnose, cure, mitigate, treat, or prevent diseases or other conditions, yet none of this Prescription Pet Food: (a) contains a drug, medicine or other ingredient that is not also common in non-prescription pet food; (b) contains a substance medically necessary to the health of the pet for which it was prescribed; and/or (c) is materially different than non-prescription pet food.

**D. Plaintiffs Would Not Have Purchased Prescription Pet Food Absent Defendants' Deceptive Conduct And Unfair Practices.**

63.     Plaintiff / Class Representative Vanzant has a cat named Tarik. On or about January 24, 2013, Tarik underwent emergency surgery for bladder stones at Blue Pearl Vet Hospital in Skokie, Illinois. At a follow up appointment on or about February 13, 2013, the veterinarian at Blue Pearl Vet Hospital, Dr. Jean Frazho, wrote a prescription for HPN Prescription Diet® c/d Multicare Feline Bladder Health Cat Food for Tarik.

64.     That same day, Ms. Vanzant went to PetSmart to purchase the prescribed HPN Prescription Diet® c/d Multicare Feline Bladder Health Cat Food for Tarik. In order to purchase

the HPN Prescription Diet® food from PetSmart, Ms. Vanzant had to transfer the prescription from Blue Pearl Vet Hospital to Banfield Pet Hospital.

65.     On or about February 13, 2013, Banfield Pet Hospital provided Ms. Vanzant with a pet prescription card containing her cat's name, RX # and RX date.

66.     Ms. Vanzant purchased the prescribed HPN Prescription Diet® c/d Multicare Feline Bladder Health Cat Food for Tarik from PetSmart in Illinois for the first time on or about February 13, 2013 and she continued to do so for approximately the next three years. Each time she purchased the HPN Prescription Diet® cat food, Ms. Vanzant was required to show the prescription card she had obtained from Banfield Pet Hospital to the cashier at PetSmart.

67.     Prior to the first time she purchased the prescribed HPN Prescription Diet® c/d Multicare Feline Bladder Health Cat Food for Tarik, Ms. Vanzant saw marketing materials indicating that the cat food she was purchasing was "prescription only," including the label on the bag stating that the cat food was "Prescription Diet®" and PetSmart's designation of a separate section of its store for prescription cat food.

68.     Plaintiff / Class Representative Nevius has a dog named Moose. On or about June 1, 2019, Moose's veterinarian at Kruger Animal Hospital prescribed HPN Prescription Diet® i/d Digestive Care dry food for Moose's gastrointestinal issues.  This dog food is a Prescription Pet Food. Ms. Nevius was told by her veterinarian that the Prescription Diet® i/d Digestive Care required a prescription to purchase. Ms. Nevius understood the Prescription Requirement to indicate that the food contained medicine and was subject to the controls associated with prescription drugs.

69.     Ms. Nevius purchased the prescribed Prescription Diet® i/d Digestive Care dry dog food for Moose from her veterinarian in Illinois for the first time on or about June 1, 2019 and fed it to Moose.

70.     Prior to the first time she purchased the prescribed Prescription Diet® i/d Digestive Care dry dog food for Moose from her veterinarian, Ms. Nevius saw marketing materials indicating that the dog food she was purchasing was "prescription only," including the label on the bag which states that the dog food is "Veterinary Exclusive" and shows the brand name Prescription Diet®.

71.     On or about January 3, 2020, Moose's veterinarian at Kruger Animal Hospital prescribed HPN Prescription Diet® i/d Digestive Care wet food for Moose's gastrointestinal issues.  This dog food is a Prescription Pet Food. Ms. Nevius purchased the prescribed Prescription Diet® i/d Digestive Care wet dog food for Moose from her veterinarian in Illinois for the first time on or about January 3, 2020 and fed it to Moose.

72.     Prior to the first time she purchased the prescribed Prescription Diet® i/d Digestive Care wet dog food for Moose from her veterinarian, Ms. Nevius saw marketing materials indicating that the dog food she was purchasing was "prescription only," including the label on the can which states that the dog food is "Veterinary Exclusive" and shows the brand name Prescription Diet®.  Photographs of the Prescription Diet® i/d Digestive Care wet dog food label from one of the cans Ms. Nevius purchased for Moose are attached hereto as Exhibit 2.

73.     To reasonable consumers, including Plaintiffs, Prescription Pet Food is prescribed and purchased by veterinarian's orders—in the exact same manner as a prescription drug for a dog or cat.

74.     Plaintiffs, as reasonable consumers, reasonably expect and believe that a substance that requires a prescription is: (a) a substance legally required to be sold by prescription; (b) a drug

or medicine; (c) a substance medically necessary to the health of the pet for which it was prescribed; (d) a substance that has been evaluated and approved by the FDA as a drug; and/or (e) a substance as to which Defendant HPN's representations regarding intended uses and effects have been evaluated by the FDA.

75.     But Plaintiffs did not receive what they expected to receive when they purchased Prescription Pet Food because the Prescription Pet Food manufactured and distributed by HPN and sold by PetSmart to Plaintiff Vanzant is not: (a) a substance legally required to be sold by prescription; (b) a drug or medicine; (c) a substance medically necessary to the health of the pet for which it was prescribed; (d) a substance that has been evaluated and approved by the FDA as a drug; and/or (e) a substance as to which Defendant HPN's representations regarding intended uses and effects have been evaluated by the FDA.

76.     Plaintiffs, as reasonable consumers, would not have purchased Prescription Pet Food, would not have purchased Prescription Pet Food for a lengthy duration, or would not have purchased Prescription Pet Food when priced so excessively relative to non-prescription pet foods absent each Defendant's deceptive conduct and unfair practices, including the false, deceptive, and misleading Prescription Requirement.

77.     Retail consumers, including Plaintiffs, have overpaid and made purchases for Prescription Pet Food that they otherwise would not have made without the Prescription Requirement and each Defendant's related false representations and omissions of material facts as detailed above, e.g. ¶¶ 25, 26 and 36.

## CLASS ALLEGATIONS

78.     Plaintiffs / Class Representatives Vanzant and Nevius bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) and seek to represent: (1) a statewide Class of all similarly

16

situated Illinois residents who purchased Prescription Pet Food from any retailer (including any veterinarian or veterinary clinic) in Illinois (the "Class"); and (2) a statewide subclass of all similarly situated Illinois residents who purchased Prescription Pet Food from PetSmart in stores or online through PetSmart.com, Pet360.com, or any other website operated or controlled by PetSmart (the "PetSmart Subclass").

79. Excluded from the Class are: (a) Defendants, and their legal representatives, officers, directors, assigns and successors; (b) the Judge to whom this case is assigned and the Judge's staff; (c) the attorneys involved in this matter; and (d) all persons or entities that purchased Prescription Pet Food for resale. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

80. The proposed Class is so numerous that individual joinder of all members in this case is impracticable. While the exact number and identities of Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe the Class is likely to consist of hundreds, if not thousands, of individuals.

81. There are several questions of law and fact that are common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual class members. The common questions of law and fact for Plaintiffs and all Class members include, but are not limited to, whether:

      a. Each Defendant may impose, advance, and/or perpetuate the Prescription Requirement in order to purchase Prescription Pet Food despite the fact that Prescription Pet Food is not legally required to be sold by prescription;

b. Defendants HPN and PetSmart falsely represented to consumers, including Plaintiffs, that Prescription Pet Food requires a prescription in the distribution, marketing, advertising, labeling, and/or sale of Prescription Pet Food;

c. By manufacturing, marketing, and/or selling Prescription Pet Food pursuant to the Prescription Requirement, Defendants HPN and PetSmart engaged in deception by omitting the following material facts: (a) Prescription Pet Food is not legally required to be sold by prescription; (b) Prescription Pet Food does not contain a drug, medicine or other ingredient that is not also common in non-prescription pet food; (c) Prescription Pet Food does not contain a substance medically necessary to the health of the pet for which it was prescribed; (d) Prescription Pet Food is not materially different than non-prescription pet food; (e) Prescription Pet Food has not been evaluated or approved by the FDA as a drug; and/or (f) Defendant HPN's representations regarding the intended uses and effects of Prescription Pet Food have not been evaluated by the FDA;

d. Prescription Pet Foods manufactured, marketed, and/or sold by Defendant HPN and PetSmart are adulterated and misbranded in violation of the FDCA;

e. Each Defendant engaged in deceptive conduct and/or unfair business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.;

f. Each Defendant should be required to pay damages, make restitution, and/or disgorge profits as a result of the above-described practices;

g. Plaintiffs and Class members are entitled to compensatory damages and the amount of such damages;

18

h. Plaintiffs and Class members are entitled to restitution and/or disgorgement and the amount of such restitution or disgorgement;

i. Plaintiffs and Class members are entitled to punitive damages and the amount of such punitive damages;

82. Plaintiffs' claims are typical of the claims of the Class.

83. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class action litigation. Plaintiffs' counsel have vast experience in consumer class action cases and have previously been certified as class counsel. Plaintiffs have no interest adverse to those of the Class, and Defendants have no defenses unique to Plaintiffs.

84. This class action is a superior method for the fair and efficient adjudication of the claims involved. The damages suffered by individual Class members are likely not substantial enough for any one class member to incur the costs and expenses of this litigation. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the potential for inconsistent or contradictory judgments and the additional delay and expense to all parties and the court system if individual cases are pursued.

**COUNT I**
**Against HPN**
**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)**

85. Plaintiffs restate and incorporate by reference paragraphs 1 - 84 of this Second Amended Class Action Complaint as paragraph 85 as if fully set forth herein.

86. The ICFA prohibits unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

19

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" in the conduct of any trade or commerce. 815 ILCS 505/2.

87.     Plaintiffs and each Class member are "consumers" as defined by Section 505/1(e) of the ICFA.

88.     Defendant HPN is a "person" as defined by Section 505/1(c) of the ICFA.

89.     Defendant HPN's conduct alleged herein occurred in "trade" or "commerce" as defined by Section 505/1(f) of the ICFA.

90.     Defendant HPN manufactures, distributes, markets, advertises, labels, and/or sells Prescription Pet Food to consumers in Illinois.

91.     For the entire time period during which Plaintiffs purchased Prescription Pet Food, Defendant HPN repeatedly represented to Plaintiffs that Prescription Pet Food requires a prescription in the distribution, marketing, advertising, labeling, and/or sale of Prescription Pet Food pursuant to the Prescription Requirement. But that representation is false because Prescription Pet Food is not legally required to be sold by prescription.

92.     By manufacturing, distributing, marketing, advertising, labeling and/or selling Prescription Pet Food pursuant to the false and misleading Prescription Requirement, Defendant HPN engaged in deception by omitting the following material facts: (a) Prescription Pet Food is not legally required to be sold by prescription; (b) Prescription Pet Food does not contain a drug, medicine or other ingredient that is not also common in non-prescription pet food; (c) Prescription Pet Food does not contain a substance medically necessary to the health of the pet for which it was prescribed; (d) Prescription Pet Food is not materially different than non-prescription pet food; (e) Prescription Pet Food has not been evaluated or approved by the FDA as a drug; and/or (f)

Defendant HPN's representations regarding the intended uses and effects of Prescription Pet Food have not been evaluated by the FDA.

93.     Defendant HPN made these omissions of material fact for the entire time period during which Plaintiffs purchased Prescription Pet Food.

94.     Each of Defendant HPN's false representations and omissions are representations and omissions of material fact because Plaintiffs and the Class, as reasonable consumers, would have acted differently had they been aware of these facts, and because the facts concerned the type of information upon which Plaintiffs and other reasonable consumers would be expected to rely in making their decisions to purchase Prescription Pet Food.

95.     Defendant HPN intended Plaintiffs and the Class to rely on its false representations and omissions of material fact.

96.     Plaintiffs and the Class, as reasonable consumers, would not have purchased Prescription Pet Food, would not have purchased Prescription Pet Food for a lengthy duration, or would not have purchased Prescription Pet Food when priced so excessively relative to non-prescription pet food absent the deceptive conduct and unfair practices by Defendant HPN, including the false, deceptive, and misleading Prescription Requirement.

97.     As a result of Defendant HPN's false representation and omissions of material fact, HPN has engaged in, and continues to engage in, deception in violation of the ICFA.

98.     In addition, Defendant HPN has manufactured, marketed, labeled, and/or sold Prescription Pet Food in violation of the FDCA. HPN's conduct in manufacturing, marketing, labeling, and/or selling Prescription Pet Food is against public policy because it violates a standard of conduct contained in an existing statute – the FDCA.

99. HPN's conduct in manufacturing, marketing, labeling, and/or selling Prescription Pet Food is immoral, unethical, oppressive, and/or unscrupulous.

100. HPN's conduct in manufacturing, marketing, labeling, and/or selling Prescription Pet Food has caused substantial harm to consumers, including Plaintiffs, because Plaintiffs and the Class paid above-market prices for Prescription Pet Food for a significant period of time and because Plaintiffs and the Class did not receive what they expected to receive when they purchased Prescription Pet Food.

101. Accordingly, HPN's conduct in manufacturing, marketing, labeling, and/or selling Prescription Pet Food constitutes an unfair business practice in violation of the ICFA.

102. Plaintiffs and the Class have suffered damages as a direct and proximate result of Defendant HPN's deceptive conduct and/or unfair acts and practices.

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action under Federal Rule of Civil Procedure 23(b)(3), and certifying the Class defined herein;

B. Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C. Entering Judgment in favor of Plaintiffs and the Class and against Defendant HPN;

D. Ordering disgorgement of any of its ill-gotten gains;

E. Awarding Plaintiffs and the Class all compensatory damages and punitive damages to the extent permitted under the Illinois Consumer Fraud and Deceptive Business Practices Act, in addition to their reasonable attorneys' fees and costs; and

F. Granting all such further relief and other relief as the Court deems just and appropriate.

22

## COUNT II
### Vanzant Against PetSmart
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)

103.    Plaintiff Vanzant restates and incorporates by reference paragraphs 1 - 84 of this Second Amended Class Action Complaint as paragraph 103 as if fully set forth herein.

104.    The ICFA prohibits unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" in the conduct of any trade or commerce. 815 ILCS 505/2.

105.    Plaintiff Vanzant and each Class member are "consumers" as defined by Section 505/1(e) of the ICFA.

106.    Defendant PetSmart is a "person" as defined by Section 505/1(c) of the ICFA.

107.    Defendant PetSmart's conduct alleged herein occurred in "trade" or "commerce" as defined by Section 505/1(f) of the ICFA.

108.    Defendant PetSmart markets, advertises, and/or sells Prescription Pet Food to consumers in Illinois.

109.    For the entire time period during which Plaintiff Vanzant purchased Prescription Pet Food, Defendant PetSmart repeatedly represented to Plaintiff Vanzant that Prescription Pet Food requires a prescription in the marketing, advertising, and/or sale of Prescription Pet Food pursuant to the Prescription Requirement. But that representation is false because Prescription Pet Food is not legally required to be sold by prescription.

23

110.    By marketing, advertising, and/or selling Prescription Pet Food pursuant to the false and misleading Prescription Requirement, Defendant PetSmart engaged in deception by omitting the following material facts: (a) Prescription Pet Food is not legally required to be sold by prescription; (b) Prescription Pet Food does not contain a drug, medicine or other ingredient that is not also common in non-prescription pet food; (c) Prescription Pet Food does not contain a substance medically necessary to the health of the pet for which it was prescribed; (d) Prescription Pet Food is not materially different than non-prescription pet food; (e) Prescription Pet Food has not been evaluated or approved by the FDA as a drug; and/or (f) Defendant HPN's representations regarding the intended uses and effects of Prescription Pet Food have not been evaluated by the FDA.

111.    Defendant PetSmart made these omissions of material fact for the entire time period during which Plaintiff Vanzant purchased Prescription Pet Food.

112.    Each of Defendant PetSmart's false representations and omissions are representations and omissions of material fact because Plaintiff Vanzant and the PetSmart Subclass, as reasonable consumers, would have acted differently had they been aware of these facts, and because the facts concerned the type of information upon which Plaintiff Vanzant and other reasonable consumers would be expected to rely in making their decisions to purchase Prescription Pet Food.

113.    Defendant PetSmart intended Plaintiff Vanzant and the PetSmart Subclass to rely on its false representations and omissions of material fact.

114.    Plaintiff Vanzant and the PetSmart Subclass, as reasonable consumers, would not have purchased Prescription Pet Food, would not have purchased Prescription Pet Food for a lengthy duration, or would not have purchased Prescription Pet Food when priced so excessively

relative to non-prescription pet food absent the deceptive conduct and unfair practices by Defendant PetSmart, including the false, deceptive, and misleading Prescription Requirement.

115.    As a result of Defendant PetSmart's false representation and omissions of material fact, PetSmart has engaged in, and continues to engage in, deception in violation of the ICFA.

116.    In addition, Defendant PetSmart has marketed, advertised and/or sold Prescription Pet Food in violation of the FDCA. PetSmart's conduct in marketing, advertising and/or selling Prescription Pet Food is against public policy because it violates a standard of conduct contained in an existing statute – the FDCA.

117.    PetSmart's conduct in marketing, advertising and/or selling Prescription Pet Food is immoral, unethical, oppressive, and/or unscrupulous.

118.    PetSmart's conduct in marketing, advertising and/or selling Prescription Pet Food has caused substantial harm to consumers, including Plaintiff Vanzant, because Plaintiff Vanzant and the PetSmart Subclass paid above-market prices for Prescription Pet Food for a significant period of time and because Plaintiff Vanzant and the PetSmart Subclass did not receive what they expected to receive when they purchased Prescription Pet Food.

119.    Accordingly, PetSmart's conduct in marketing, advertising and/or selling Prescription Pet Food constitutes an unfair business practice in violation of the ICFA.

120.    Plaintiffs and the PetSmart Subclass have suffered damages as a direct and proximate result of Defendant PetSmart's deceptive conduct and/or unfair acts and practices.

WHEREFORE, Plaintiff Vanzant, individually, and on behalf of all others similarly situated, prays for an Order as follows:

25

A.  Finding that this action satisfies the prerequisites for maintenance as a class action under Federal Rule of Civil Procedure 23(b)(3), and certifying the PetSmart Subclass defined herein;

B.  Designating Plaintiff Vanzant as representative of the PetSmart Subclass, and their undersigned counsel as Class Counsel;

C.  Entering Judgment in favor of Plaintiff Vanzant and the PetSmart Subclass and against Defendant PetSmart;

D.  Ordering disgorgement of any of its ill-gotten gains;

E.  Awarding Plaintiff Vanzant and the PetSmart Subclass all compensatory damages and punitive damages to the extent permitted under the Illinois Consumer Fraud and Deceptive Business Practices Act, in addition to their reasonable attorneys' fees and costs; and

F.  Granting all such further relief and other relief as the Court deems just and appropriate.

**COUNT III**
**Against HPN - In the alternative**
**(Restitution/Unjust Enrichment)**

121.    Plaintiffs restate and incorporate by reference paragraphs 1 - 84 of this Second Amended Class Action Complaint as paragraph 121 as if fully set forth herein.

122.    Defendant HPN has unjustly acquired and retained a benefit to the detriment of Plaintiffs and the Class because it has retained revenues derived from Plaintiffs' and the Class members' purchases of Prescription Pet Food.

123.    Defendant HPN appreciates and is aware of the benefit it has acquired and retained from its conduct.

124.     Retention of monies under these circumstances violates the fundamental principles of justice, equity, and good conscience because Defendant HPN repeatedly represented to Plaintiffs that Prescription Pet Food requires a prescription in the distribution, marketing, advertising, labeling, and/or sale of Prescription Pet Food pursuant to the Prescription Requirement. But that representation is false because Prescription Pet Food is not legally required to be sold by prescription.

125.     In addition, by manufacturing, distributing, marketing, advertising, labeling and/or selling Prescription Pet Food pursuant to the false and misleading Prescription Requirement, Defendant HPN engaged in deception by omitting the following material facts: (a) Prescription Pet Food is not legally required to be sold by prescription; (b) Prescription Pet Food does not contain a drug, medicine or other ingredient that is not also common in non-prescription pet food; (c) Prescription Pet Food does not contain a substance medically necessary to the health of the pet for which it was prescribed; (d) Prescription Pet Food is not materially different than non-prescription pet food; (e) Prescription Pet Food has not been evaluated or approved by the FDA as a drug; and/or (f) Defendant HPN's representations regarding the intended uses and effects of Prescription Pet Food have not been evaluated by the FDA.

126.     Under the principles of justice, equity, and good conscience, Defendant HPN should not be allowed to keep the money belonging to Plaintiffs and the Class members.

127.     Plaintiffs and the Class have suffered damages as a direct result of Defendant HPN's conduct.

128.     Plaintiffs, on behalf of themselves and the Class, seek restitution for Defendant HPN's unjust and inequitable conduct, as well as interest and attorneys' fees and costs.

27

129.    Plaintiffs and the Class do not have an adequate remedy at law to redress their damages.

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action under Federal Rule of Civil Procedure 23(b)(3), and certifying the Class defined herein;

B.  Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.  Entering Judgment in favor of Plaintiffs and the Class and against Defendant HPN;

D.  Ordering disgorgement of any of its ill-gotten gains;

E.  Awarding Plaintiffs and the Class restitution in addition to their reasonable attorney's fees and costs; and

F.  Granting all such further relief and other relief as the Court deems just and appropriate.

**COUNT IV**
**Vanzant Against PetSmart - In the alternative**
**(Restitution/Unjust Enrichment)**

130.    Plaintiff Vanzant restates and incorporates by reference paragraphs 1 - 84 of this Second Amended Class Action Complaint as paragraph 130 as if fully set forth herein.

131.    Defendant PetSmart has unjustly acquired and retained a benefit to the detriment of Plaintiff Vanzant and the PetSmart Subclass because it has retained revenues derived from Plaintiff Vanzant's and the PetSmart Subclass members' purchases of Prescription Pet Food.

132.    Defendant PetSmart appreciates and is aware of the benefit it has acquired and retained from its conduct.

133.    Retention of monies under these circumstances violates the fundamental principles of justice, equity, and good conscience because Defendant PetSmart repeatedly represented to Plaintiff Vanzant and the PetSmart Subclass that Prescription Pet Food requires a prescription in the distribution, marketing, advertising, labeling, and/or sale of Prescription Pet Food pursuant to the Prescription Requirement. But that representation is false because Prescription Pet Food is not legally required to be sold by prescription.

134.    In addition, by manufacturing, distributing, marketing, advertising, labeling and/or selling Prescription Pet Food pursuant to the false and misleading Prescription Requirement, Defendant PetSmart engaged in deception by omitting the following material facts: (a) Prescription Pet Food is not legally required to be sold by prescription; (b) Prescription Pet Food does not contain a drug, medicine or other ingredient that is not also common in non-prescription pet food; (c) Prescription Pet Food does not contain a substance medically necessary to the health of the pet for which it was prescribed; (d) Prescription Pet Food is not materially different than non-prescription pet food; (e) Prescription Pet Food has not been evaluated or approved by the FDA as a drug; and/or (f) Defendant HPN's representations regarding the intended uses and effects of Prescription Pet Food have not been evaluated by the FDA.

135.    Under the principles of justice, equity, and good conscience, Defendant PetSmart should not be allowed to keep the money belonging to Plaintiff Vanzant and the PetSmart Subclass members.

136.    Plaintiff Vanzant and the PetSmart Subclass have suffered damages as a direct result of Defendant PetSmart's conduct.

137.     Plaintiff Vanzant, on behalf of herself and the PetSmart Subclass, seeks restitution for Defendant PetSmart's unjust and inequitable conduct, as well as interest and attorneys' fees and costs.

138.     Plaintiff Vanzant and the PetSmart Subclass do not have an adequate remedy at law to redress their damages.

WHEREFORE, Plaintiff Vanzant, individually, and on behalf of all others similarly situated, prays for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action under Federal Rule of Civil Procedure 23(b)(3), and certifying the PetSmart Subclass defined herein;

B.  Designating Plaintiff Vanzant as representative of the PetSmart Subclass, and their undersigned counsel as Class Counsel;

C.  Entering Judgment in favor of Plaintiff Vanzant and the PetSmart Subclass and against Defendant PetSmart;

D.  Ordering disgorgement of any of its ill-gotten gains;

E.  Awarding Plaintiff Vanzant and the PetSmart Subclass restitution in addition to their reasonable attorney's fees and costs; and

F.  Granting all such further relief and other relief as the Court deems just and appropriate.


**JURY DEMAND**

Plaintiffs and the members of the Class demand a trial by Jury on any issues triable by a Jury.

Dated:  August 31, 2021                    Respectfully submitted,


                                           By: */s/ Ellen M. Carey*
                                                 One of Plaintiffs' Attorneys

Brian P. O'Meara
Ellen M. Carey
Kevin R. Malloy
Forde & O'Meara LLP
111 West Washington Street
Suite 1100
Chicago, IL  60602
(312) 641-1441

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing Second Amended Class Action

Complaint was filed electronically with the Clerk of the Court using the CM/ECF system this

31st day of August, 2021, and served electronically on all counsel of record.


                                           *s/ Ellen M. Carey*