IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOLLY BLAINE VANZANT, and SHERRY NEVIUS, individually and on behalf of all others similarly situated,  )))) | |
| Plaintiffs,  ) | No. 17 C 2535 |
| )  v.  ) | Magistrate Judge Jeffrey Cole |
| )  HILL'S PET NUTRITION, INC. and PETSMART LLC,  ))))  Defendants.  ) | |

**MEMORANDUM OPINION AND ORDER**

The defendants are challenging the expert testimony of two of plaintiffs' rebuttal experts, Thomas Maronick, a marketing expert, and Janet Netz, an economics expert. Essentially, the defendants complain that they are not "rebuttal" opinions at all. For the following reasons, the defendants' motion [Dkt. #241] is granted insofar as Maronik's report is stricken and defendants's experts are allowed to respond to Netz's opinions about her but-for world in connection with any motion, hearing, or trial.

Nearly six years ago, on March 2, 2017, a couple of cat owners – their cats were Tarik and Chief – filed a class action lawsuit against the defendants in Cook County Circuit Court. About four years into the case, Chief's owner had to drop out. She was replaced by a dog owner, whose dog is named Moose. The pet owners' beef was that the defendants said their cat food required a prescription when, legally, it did not. Allegedly, that "prescription" label lead to the plaintiffs paying a premium for their pets' food. The attorneys for those pet owners and those pet food sellers are still going at it six years later, and seem to have raised this dispute over the cost of dog food to the level

of an existential struggle. Remarkably, the present battle over expert rebuttals alone has involved sixteen separate filings covering over 1,000 pages, including a botched attempt to seal a number of documents. [Dkt. ##221, 222, 223, 224, 230, 231, 232, 233, 236, 237, 238, 239, 241, 242, 244, 245].

So, it's no wonder this case has not exactly moved at a greyhound-like pace. The attorneys have missed so many deadlines over the years that it's easy to lose count of them all. As it happens, they've also changed those deadlines so very often that there seems to be some confusion as to what they are or were. So, the parties' present discovery dispute, which all can agree comes after the close of *all* discovery, forces the court to begin with a little schedule archaeology.

## I.

Way back on January 28, 2020, the parties agreed that they would complete fact discovery by June 1, 2021, and expert discovery by August 27, 2021. [Dkt. #80]. As of June 18, 2020, the pandemic extensions – which the parties agree were adequate for them to complete their work – extended those dates to September 6, 2021 and November 12, 2021. [Dkt. #92]. But, about a year later, as that September deadline approached, the plaintiffs, by agreement with the defendants, moved for another extension of all discovery deadlines. [Dkt. #127]. The court, once again extended discovery: fact discovery was to be completed by January 6, 2022, and expert discovery was to be completed by June 23, 2022. [Dkt. #128]. As that January 2022 deadline approached, defendants, in agreement with the plaintiffs, filed another agreed motion for an extension of discovery. [Dkt. #151]. On December 15, 2021, the court granted this motion and the then-new deadlines were February 22, 2022 for fact discovery and August 8, 2022 for expert discovery. [Dkt. #152].

Still, the lawyers could not meet the then-new schedule despite the fact that it was of their own devising. Just one week before fact discovery was set to close, plaintiffs filed yet another

2

motion to extend all the deadlines. [Dkt. #176]. This time, the defendants were not in complete agreement with adding more time. [Dkt. #176, Pars. 15, 16]. The plaintiffs, however, proposed the following new schedule and wanted to add another round of expert opinions:

> Fact discovery closure: March 23, 2022;
> Plaintiffs' Rule 26(a)(2) expert disclosures: May 4, 2022
> Plaintiffs' expert depositions: June 15, 2022
> Defendants' Rule 26(a)(2) expert disclosures: July 27, 2022
> Defendants' expert depositions: September 7, 2022
> Plaintiffs' rebuttal expert disclosures: September 28, 2022
> Plaintiffs' rebuttal expert depositions: October 19, 2022
> All expert discovery closes: October 19, 2022

The court once again granted the extensions, but stated, understandably, that the extensions were final. [Dkt. #177]. The final fact discovery deadline would be March 23, 2022, and the final expert discovery deadline would be October 19, 2022. [Dkt. #176, 177]. But, as inevitably as night following day, the plaintiffs, yet again, could not meet their own deadlines and filed another motion to extend all the discovery deadlines after the close of business on the evening fact discovery ended, March 23, 2022. [Dkt. #186].

In that motion for an extension of time the plaintiffs, on the one hand, proposed adding 60 days to every deadline [Dkt. #186, Pars. 11, 12] and asked for the following schedule:

> Fact discovery closure: May 23, 2022
> Plaintiffs' Rule 26(a)(2) expert disclosures: July 8, 2022
> Plaintiffs' expert depositions: August 19, 2022
> Defendants' Rule 26(a)(2) expert disclosures: September 30, 2022
> Defendants' expert depositions: October 28, 2022
> Plaintiffs' rebuttal expert disclosures: November 18, 2022
> Plaintiffs' rebuttal expert depositions: December 9, 2022
> All expert discovery closes: December 9, 2022

[Dkt. #186, Par. 13]. The court denied the plaintiffs' motion – in part. The court granted the plaintiffs extra time, but reduced plaintiffs' desired delay of these proceedings by 30 days, rather than

3

simply accepting another 60-day extension. [Dkt. #187]. As such the new deadlines would be:

> Fact discovery closure: April 22, 2022
> Plaintiffs' Rule 26(a)(2) expert disclosures: June 8, 2022
> Plaintiffs' expert depositions: July 20, 2022
> Defendants' Rule 26(a)(2) expert disclosures: August 31, 2022
> Defendants' expert depositions: September 28, 2022
> Plaintiffs' rebuttal expert disclosures: October 19, 2022
> Plaintiffs' rebuttal expert depositions: November 9, 2022
> All expert discovery closes: November 9, 2022

[Dkt. #186, Par. 13, #187].

The court's order, however, mistakenly indicated that all expert discovery would end on October 10, 2022. [Dkt. #187]. The court amended the order a day later and said all expert discovery would close on November 18, 2022 [Dkt. #190], which allowed ten days for any challenges that might come up as a result of any last minute rebuttal expert depositions.

Blissfully, it seemed that the sixth set of deadlines was finally the charm and all pet food discovery ended two long years and ten long months after it began, on November 18, 2022. But, ten days after that the defendants filed the current motion. And the plaintiff have a real issue with those ten days.

The plaintiffs argue that, as the defendants' motion to strike was filed after the expert discovery deadline, the motion is untimely. The deadline argument is audacious on a couple of levels. The plaintiffs' appetite for more and more discovery was the driving force for the lion's share of missed deadlines and seemingly endless delays in this case. [Dkt. ## 127, 176, 186]. Discovery is supposed to be "proportional to the needs of the case, considering the importance of the issues at stake in the action." Fed.R.Civ.P. 26(b)(1). At bottom, this is a case about money; it's about the allegedly excessive price of Moose's kibble. [Dkt. #136, Pars. 1, 22-24, 33, 35, 58, 60, 76, 96, 100,

4

114]. At one point, two or three extensions ago, plaintiffs' attorneys had already accumulated well over half a million documents from the defendants. [Dkt. #127, Par. 6]. It was about that time – a year and a half or so into discovery – that they finally realized they had bitten off much more than they could chew and brought in another law firm to help out. [Dkt. #127, Par. 14].

Still, the plaintiffs waited until sometime around February 2022 – two years into discovery – to send out numerous third party subpoenas for sales data. [Dkt. #176, Par. 8]. That included data for some 447 different prescription diet pet food products. [Dkt. #186, Par. 7]. Predictably – at least it ought to have been predictable – that process took longer than plaintiffs planned for [Dkt. #186, Pars. 7-10]. Suffice it to say, the plaintiffs gobbled up "enough discovery here to choke a horse," *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008), while missing multiple deadlines over the course of two and a half years.

The plaintiffs' habit of missing deadlines or penchant for waiting for the last minute makes them the wrong people to complain about timeliness. The plaintiffs didn't serve the rebuttal reports at issue – the reports of Maronick and Netz – until October 28, 2022. Recall that, in plaintiffs' most recent motion for an extension, plaintiff sought an extension of the rebuttal disclosure by 60 days to November 18, 2022. [Dkt. #186, Pars. 12, 13]. The court allowed 30 days less than that [Dkt. #187], meaning plaintiff's rebuttal opinions were due October 19, 2022. So, the plaintiff was a week and a half late with the opinions from Maronick and Netz. That's reason enough to strike them both, especially when parties offering those opinions are crying foul over the tardiness of the defendants' motion.[1]

---

[1] It's unclear where the scheduling went off the rails for the plaintiffs, but it seems there was a mistaken deadline in one of plaintiffs' motions for extensions. As already noted, it's not surprising attorneys might become confused when missing deadlines and adding 30 or 60 days to schedules becomes a matter of

But, the plaintiffs continue, arguing that the defendants had all the information they needed for their motion to strike as of October 28, 2022, when plaintiffs served their purported rebuttal reports. [Dkt. #230, at 3-4]. To the plaintiffs' way of thinking, three weeks was more than enough time to put together a motion to strike the October 28th reports or move for leave to serve surrebuttals. That seems optimistic, especially in a case where deadlines have rarely been observed and especially since the plaintiffs' attorneys seem to be the ones asking for more time, more often than not. Three weeks? It took twice that long for the plaintiffs to simply retain Maronick – from August 26th to October 10th – once they had the report from defendants' survey expert, Sarah Butler. (Maronick Dep., at 70). Clearly, for a number of reasons, the plaintiffs are in no position to argue against a motion to strike because they think it was filed too late.

## II.

Rule 26 of the Federal Rules of Civil Procedure permits parties to "to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). But, "[a] rebuttal expert report 'cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions.' " *Lowe v. CVS Pharmacy, Inc.*, No. 14 C 3687, 2017 WL 2152385, at *2 (N.D. Ill. May 17, 2017). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (citation omitted); see also *Stanfield v. Dart*, No. 10 C 6569, 2013 WL 589222, at *3 (N.D. Ill. Feb. 14, 2013). ("A party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in

---

routine rather. And, it probably doesn't help in terms of accuracy to parcel out work among thirteen lawyers from six law firms in five states. But in any event, a month short of the rebuttal deadline plaintiffs requested – November 18 [Dkt. #186, Par. 13]– is clearly not October 28.

6

chief.").

Butler's report resulted from surveys she designed and conducted with 600 purchasers of therapeutic pet food, 403 veterinarians, and 411 purchasers of defendant Hill's Prescription Diet pet food. The survey examined plaintiffs' claims of materiality of "prescription" packaging in purchase behavior. She concluded that "prescription" labeling and packaging does not affect purchasing behavior. Her veterinarian survey examined the claim that an "authorization requirement" is misleading. She found that veterinarians were equally likely to provide a formal authorization as to simply note on the chart the food had been authorized. She felt this undermined the claim that purchasers were making a choice between prescription and over-the-counter products. Veterinarians also recommended certain products, meaning purchasers would be unlikely to review label information and simply purchase those products. Veterinarians generally were not questioned by pet owners as to whether the products contained drugs. Butler reported that her survey demonstrated that most consumers purchased defendant Hill's product because a veterinarian recommended it. Few think of the products as prescribed at all but rather as recommended by their veterinarians. Defendant Hill's product purchasers were not relying on the product name to communicate information about the product's ingredients. [Dkt. #232-5].

Maronick's report went beyond addressing Butler's surveys, data, and conclusions derived therefrom. Maronick explained at the beginning of his report that he was retained to not only review and address Butler's survey evidence and opinions, but also to "provide opinions regarding whether the Defendants' practice of requiring a veterinarian's prescription (or functionally equivalent authorization) and to purchase Hill's Prescription Diet products and their representations and omissions regarding these products and are material to consumers." [Dkt. #224-2, at 3]. He said it

7

was his opinion that defendants' marketing conduct as a whole implied Prescription Diet products have high credence quality because they are described as "prescription" products and presented as appropriate treatment for their pet's ailment, which credence quality is material to consumers deciding whether to purchase a product for their sick pets. [Dkt. #224-2, at 5].

He also said it was his opinion that FTC would presume defendants' marketing conduct is material because defendants made express claims that Prescription Diet products are prescription products that involve the health and safety of pets. [Dkt. # 224-2 , at 6]. About half of his report said nothing about Butler's surveys, data, or conclusions. Maronick instead focused on his own impressions of legal and FTC standards and how his own opinion of what was material was drawn from them. [Dkt. # 224-2, 11-12]. There was, however, a portion of his report in which he did tackle Butler's surveys and data [Dkt. # 224-2, at 13-20], but then it was back to what the FTC presumed as opposed to what survey consumers thought. [Dkt. #224-2, at 20-21].

Maronick's deposition testimony confirms that he was offering opinions that were extraneous to his rebuttal of Butler's survey work:

> Q. Is your opinion separate from -- well, let me put it this way. If Dr. Butler did not testify in this case, would you have anything to opine about?
>
> A. First of all, she's not a doctor, but I was retained to rebut what she wrote and her conclusions and that's what my -- my analysis is based to and what she did as well as two other factors. So if Ms. Butler doesn't testify, there are still two other factors that come into play in reaching my opinion relative to materiality. Number one, my marketing background. And number two, my FTC experience.

(Maronick Dep., at 46).

> Q. So in addition to rebutting the Butler report, you are also opining on the materiality of Hill's marketing to consumers?

8

> A. That's correct. Her conclusions, and I'm using not only her data to support my rebuttal, but also my background in marketing and review of the total marketing process related to the Hill's Prescription Diet product. And also my Federal Trade Commission experience, particularly the fact that the Federal Trade Commission said that things related to health and safety are presumed material. So even without Ms. Butler's opinion, my opinion as to materiality is based on two other things that go beyond what she had concluded.

(Maronick Dep., at 46-47).

> Q. Okay. So which representations are you opining are material to consumers?
>
> A: It's the totality of their marketing program. The fact that the veterinarian prescribes, key word "prescribes," the Hill's prescription dietary product.
>
> The fact that for a consumer to -- to purchase the product at, let's say, a retail store, they have to be able to present the prescription or "authorization" and, for example, in the case of PetSmart, they have to get a med card and the med card requires the authorization from the vet, from the veterinarian. So all of those are indicia of this being a "controlled substance" that purport to have medicine.
>
> Plus the fact, as I said a moment ago, the FTC policy statement on deception said anything related to health and safety is presumed material. So the combination of those two things, even independent of Ms. Butler's results, which I think also support that conclusion, stand for the proposition that their practices are what -- the use of "Prescription Diet" is a material factor for consumers.

(Maronick Dep., at 48-49).

Aside from his critique of Butler's survey conclusions [Dkt. #224-2, at 13-20], Maronick is offering materiality opinions that should have been a part of plaintiff's original expert disclosures. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)("Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact."); *see also Africano v. Atrium Med. Corp.*, No. 17 CV 7238, 2019 WL 5085338, at *3 (N.D. Ill. Oct. 10, 2019)("For matters on which [plaintiff] bears the burden of proof, such opinions must be offered in the initial expert reports, not in a rebuttal report."); *Baldwin Graphic Sys., Inc. v.*

9

*Siebert, Inc.*, No. 03 CV 07713, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005).[2] Accordingly, that part of defendants' motion seeking to strike Maronick's opinions about the FTC and the materiality of defendants' marketing is granted.

### III.

Netz's opening opinion came way back in June of 2022. In it, she sought to explain her class-wide damages estimate of $92 million. She made up a "but-for world" in order to do this, a world where there was no prescription diet food. [Netz's Report, Par. 67]. She noted that the plaintiffs had lodged both a deception claim and an unfair business practices claim, but explained that "[t]he effect of the at-issue conduct . . . is the same under each form of violation . . . "whether Plaintiffs prevail on either or both forms of violation, in the but-for world, pet manufacturers and resellers, including Defendants, would not market or sell these products pursuant to a prescription requirement or market them as therapeutic products. Instead, the current Prescription Diet line of food would have been marketed and sold as a wellness product." [Netz's Report, Par. 68]. She said her "damages methodology and estimates [we]re the same whether Plaintiffs prevail on either or both forms of violation of the ICFA because the but-for world would be the same. [Netz's Report, Par. 69]. In either case, Netz thought that "[t]he at-issue conduct induced a higher willingness to pay" in part because "[t]he marketing of Hill's Prescription Diet products as having therapeutic properties and the prescription requirement implies that Hill's Prescription Diet products are higher quality products than they actually are. For example, consumers incorrectly believe Prescription Diet products contain medicine." (Netz Report, Par. 55).

---

[2] These holdings are consistent with and dictated by the basic principle that "justice is not a game" *United States v. Paglia,* 190 F.2d 445, 448 (2nd Cir.1951) (L.Hand, J.) and impermissibly attempting to get the "last word" on a matter is forbidden. *United States v. Portis*, 542 F.2d 414, 418 (7th Circuit 1976).

Defendants submit that their experts understandably offered opinions responsive to the single but-for world described in Netz's report. But they cry foul because at her deposition, Netz said that she had "two particular scenarios. The conduct alleged to violate the deceptive practices claim doesn't happen, and in that but-for world, there is no therapeutic food. In another but-for world where the conduct alleged to be illegal or violative of the unfair practices claim in the but-for world, that [conduct] doesn't occur and therefore the but-for world is one in which there is no therapeutic pet food." (Netz Dep., at 161). She added that "in her unfair practices but-for world, all that matters is whether Defendants violated the Food Drug and Cosmetic Act"—"regardless of deception." (Netz Dep., at 210).

In her rebuttal report – which is a rebuttal of defendants' experts' response or rebuttal to her original report – Netz criticized defendants' experts for ignoring the two distinct claims the plaintiff had brought. She said that "several of their criticisms may apply to deceptive practices but not unfair practices." (Netz Rebuttal, Par. 12a). She argued that:

> Dr. Ugone criticizes my analysis on the basis of Plaintiffs' deceptive practices claim but completely ignores the unfair practices claim. Similarly, while Dr. Wilner's report discusses damages calculations "absent the deceptive conduct", there is no analogous discussion or calculations addressing the unfair practices conduct.

(Netz Rebuttal Rep., Par. 44). She then added that "Dr. Wilner argues that individualized analysis is necessary to show that the deceptive practices allegation changed economic conditions; he does not say anything about any need for individualized analysis under the unfair practices allegation." (Netz Rebuttal, Par. 46). So, seemingly, for Dr. Netz, the analysis for the two claims, contrary to what she said in her opening report, is *not* the same. Yet, at the same time, Netz continued to assert that "the but-for world … is *the same* under either alleged violation . . . ." (Netz Rebuttal Rep., Par.

11

88(emphasis added)). As she put it, "the but-for world – which is free from the challenged conduct – is the same under either alleged violation. . . . Consequently, the Defendants' conduct as to both deceptive and unfair practices is such that the but-for world is the same regardless of whether Plaintiffs prevail on their deceptive practices act claim, their unfair practices act claim, or both." (Netz Rebuttal, Par. 20).

So, is there a second but-for world or not? If the same but-for world – a world with no therapeutic pet food – applies to damages from both claims, what is the point of Netz's critique of the defendants' experts' failure to differentiate damages models for the two claims? One would hope the plaintiffs would be able to clear this up in their response to defendants' motion, but that hope would be in vain, as the plaintiffs don't clear things up in their response. They say the defendants, essentially, made up the whole second but-for world, a world they contend Netz made up in her rebuttal report. There is only one but-for world, according to the plaintiffs, the imaginary world in which there is no therapeutic pet food. [Dkt. #230, at 12]. But the plaintiffs refuse to let go of Netz's criticisms of the defendants' experts' failure to address the differences in analyses between the plaintiff's two claims. [Dkt. #230, at 12]. In fact, the plaintiffs say that this is a "critical flaw in the defense experts' opinions." [Dkt. #230, at 12-13]. But, how can it be a critical flaw when, as the plaintiffs reassert for Netz, "[t]he but-for world, where the illegal acts would not have occurred in any period, is the same under the deceptive practices and the unfair practices claims"? [Dkt. #230, at 13]. It's a question the plaintiffs never manage to answer.

The plaintiffs and their expert can't have it both ways. They can't, on the one hand, complain that the defendants' experts failed to employ two distinct analyses – or as Netz might put it, two different "but-for" worlds – and on the other say there is no need for a second but-for world. But,

as best as the court can ascertain, what the plaintiffs and their expert have done is not so much come up with a second but-for world in Netz's rebuttal opinion, but make a bit of a mess of that rebuttal opinion in order to throw unwarranted darts at the defendants' experts. As such, the court finds the appropriate remedy here is not to strike the entire rebuttal opinion or whatever portions of it deal with a second but-for world – if that could even be accomplished. Additionally, the court is not going to allow defendants a sur-rebuttal and even more expert discovery in this already bloated litigation. If there were a prescription diet for lawsuits, this case would be on it. After more than two and a half years, discovery – all discovery – is finally closed, and there will be no looking back. Instead the court agrees with the defendants' third option: Dr. Ugone and Dr. Wilner may respond to Dr. Netz's opinions about her but-for world in connection with any motion, hearing, or trial. "All good things, including discovery, must come to an end." *U.S. ex rel Taylor v. Hicks*, 513 F.3d 228, 238 (5th Cir. 2008). If counsel desire a settlement conference, they should contact my courtroom deputy, Yulonda Thomas (312-408-5178) within the next two weeks. Otherwise, the referral will be closed and the case returned to Judge Alonso.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE: 1/6/23**

13