**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HOLLY BLAINE VANZANT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 17 C 2535 |
| ) | |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| HILL'S PET NUTRITION INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons that follow, the Court grants Defendant Hill's Pet Nutrition, Inc.'s ("Hill's") motion to decertify the class [409] and the parties' motions to seal [416] [418]. The Court denies Hill's' motion on the disclosure of trial plans [426] as moot. The Court also grants the pending motion to withdraw counsel [433].

**BACKGROUND**

The Court assumes familiarity with the background of this litigation provided in detail in its opinions on class certification and summary judgment. (*See generally* ECF Nos. 314, 408.) As such, the Court provides only the background relevant to this order.

Plaintiffs sued Hill's and PetSmart alleging that the way Prescription Diet ("PD") pet food was marketed and sold was both unfair and deceptive under Illinois law. On September 29, 2023, the Court granted Plaintiffs' motion for class certification as to their claims for deceptive and unfair practices against Hill's. The Court denied class certification as to Plaintiffs' deceptive-practices claim against PetSmart due to the lack of an adequate representative to bring the claim. Because Plaintiffs' damages model did not differentiate between unfair and deceptive conduct, the Court

1

denied class certification as to Plaintiffs' unfair-practices claim against PetSmart pursuant to *Comcast v. Behrend*, 569 U.S. 27 (2013).

On January 24, 2025, the Court granted PetSmart's motion for summary judgment and granted in part and denied in part Hill's' motion for summary judgment. As relevant here, the Court granted summary judgment in Hill's' favor on Plaintiffs' unfair-practices claim and ruled that Plaintiffs' deceptive-practices claim could proceed to the extent that it was based on a theory that the enforcement of the prescription requirement along with the labeling of the pet food as "Prescription Diet" falsely represented to consumers that PD products contain a drug or medicine. (ECF No. 408 at 17–18.)

On January 29, 2025, Hill's filed a motion to decertify the class, arguing that Plaintiffs' damages model is unsound after summary judgment because the model measures the effect of both the allegedly unfair and the deceptive conduct in tandem, while only claims relating to the allegedly deceptive conduct remain in the case. (ECF No. 409.)

**LEGAL STANDARD**

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "After granting certification, the court remains under a continuing obligation to review whether proceeding as a class action is appropriate." *Pietrzycki v. Heights Tower Serv., Inc.*, 290 F. Supp. 3d 822, 831 (N.D. Ill. 2017) (quotations omitted). When a defendant moves to decertify a class, the plaintiffs bear the burden of "demonstrating the continued propriety of maintaining the class action." *Rogers v. Sheriff of Cook Cnty.*, No. 1:15-CV-11632, 2024 WL 1376134, at *2 (N.D. Ill. Mar. 30, 2024); *Berger v. Perry's Steakhouse of Illinois, LLC*, No. 14 C 8543, 2020 WL 5848374, at *1 (N.D. Ill. Oct. 1, 2020) (same).

**DISCUSSION**

For the reasons that follow, the Court grants Hill's' motion to decertify the class.

I.  **Motion to Decertify**

When plaintiffs seek to prove that damages are measurable on a class-wide basis through a model, that model must "measure only those damages attributable to" the theory of harm in the case. *Comcast Corp.*, 569 U.S. at 35. "The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Id.* at 38 (cleaned up). In *Comcast*, the Supreme Court reversed a decision certifying a class because the proposed model calculated damages assuming the validity of four theories of harm "and did not attribute damages to any one particular theory," and only one theory of harm was certified for class treatment. *Id.* at 36–37.

Plaintiffs' expert, Janet Netz, adduced a benchmark damages model in support of class certification which calculated damages by comparing the price of PD products to Hill's Science Diet products, which, unlike PD products, lack a prescription requirement and therapeutic marketing. (ECF No. 314 at 25.) Hill's argues that, while this model may have provided support for class certification where Plaintiffs advanced claims concerning alleged unfair and deceptive practices, the model is no longer appropriate after summary judgment because only Plaintiffs' deceptive-practices claim remains, which does not concern therapeutic marketing. Plaintiffs argue that decertification is inappropriate because (1) their deceptive-practices claim challenges therapeutic marketing, (2) Netz analyzed the deceptive and unfair conduct separately and reached the same result, (3) Netz could supplement her report to address this issue, and (4) even without common proof of damages, common questions predominate. The Court agrees with Hill's and decertifies the class.

### A. The Deceptive-Practices Claim Does Not Concern Therapeutic Marketing

When moving for class certification, Plaintiffs made clear that their deceptive-practices claim was based on the prescription requirement for PD products and the labeling of the products as "Prescription Diet." For example, Plaintiffs explained their deceptive-practices claim as follows:

> Defendants market and sell products labeled "Prescription Diet," improperly restrict the sale of these products to consumers with a "prescription" from a veterinarian, impliedly represent that PD products contain a drug or medicine (when they do not), falsely represent that PD products are prescription products and that a prescription is required to purchase these products, and fail to disclose to consumers on the product labels or elsewhere that PD products are not legally required to be sold by prescription and that they do not contain a drug or medicine. Defendants' self-imposed prescription requirement and their material misrepresentations and omissions about PD products constitute deceptive practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

(ECF No. 252 at 1.) Similarly, Plaintiffs provided a common question for their deceptive-practices claim of "[w]hether Defendants have engaged in deceptive conduct by marketing and selling 'Prescription Diet' labeled products pursuant to the prescription requirement and without disclosing that the products are not legally required to be sold by prescription and do not contain medicine." (*Id.* at 8.)

When Plaintiffs referred to therapeutic marketing, it was in the context of their unfair-practices claim. (*Id.* at 1–2 ("Defendants' illegal marketing and sale of PD products as therapeutic products constitutes an unfair-practices violation of the ICFA."), 8 (posing a common question of "[w]hether Defendants' marketing and sale of PD products as therapeutic products intended for use in the diagnosis, treatment, mitigation, cure, and prevention of diseases in pets violates public policy (by violating the federal and IL FD&C Acts), is unethical or unscrupulous, and/or causes

4

substantial harm to consumers and thus, is unfair"), 13 ("Common evidence demonstrates that Defendants' marketing and sale of PD products as therapeutic products is unfair.").)

In granting class certification on Plaintiffs' deceptive-practices claim, the Court recognized that the allegedly deceptive practices were the prescription requirement and the "Prescription Diet" label, not therapeutic marketing. (ECF No. 314 at 19–21 ("[T]he prescription requirement itself is the allegedly deceptive act."), 25 (describing the prescription requirement as the deceptive practice and therapeutic marketing as the unfair practice).) For the same reasons the Court did not allow Plaintiffs to expand their theory of their unfair-practices claim at summary judgment beyond what was considered by the Court at class certification, the Court will not now allow Plaintiffs to expand their theory of their deceptive-practices claim beyond what was certified for class treatment—the prescription requirement and "Prescription Diet" labeling. (ECF No. 408 at 10 ("An order that certifies a class action must define the class and the class claims, issues, or defenses[.]" (citing Fed. R. Civ. P. 23(c)(1)(B))).) Accordingly, the Court rejects Plaintiffs' argument that the damages model is appropriate because their deceptive-practices claim challenges therapeutic marketing.

**B. Netz's But-For World Is Not Otherwise Appropriate**

Plaintiffs alternatively argue that there is no *Comcast* issue with Netz's damages model because it does not depend on the validity of Plaintiffs' unfair-practices claim. Specifically, they argue that Netz separately analyzed the wrongful conduct under each theory and determined that the but-for world would be the same regardless of whether a deceptive-practices or an unfair-practices claim was brought. However, the Court has already rejected this argument. In the Court's class-certification opinion, it held that Netz's damages model "is tied to Plaintiffs' two theories of harm" which caused no *Comcast* issue as to Hill's while both claims remained. (ECF No. 314 at 25–26.) However, the Court denied class certification as to Plaintiffs' unfair-practices claim

5

against PetSmart because no deceptive-practices claim remained and "Netz's damages model does not differentiate between damages due to deceptive versus unfair practices" which meant that the model "falls short of establishing that damages based on PetSmart's unfair practices are capable of measurement on a class-wide basis." (*Id.* at 26.) The Court stands by its ruling that the damages model does not adequately differentiate damages between the Plaintiffs theories of harm because Plaintiffs have failed to provide a compelling reason for the Court to depart from it and because it constitutes the law of the case. *Krieger v. United States*, 842 F.3d 490, 505 (7th Cir. 2016) ("[A] ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it.").

C. Supplementation Is Not Appropriate

In the alternative, Plaintiffs ask the Court for leave to supplement Netz's report under Rule 26(e)(2) in a manner which remedies the *Comcast* issue. Supplementation is not appropriate here because Netz would need to introduce a fundamentally different damages model that measures only the impact of the allegedly deceptive conduct. *Cerda v. Chicago Cubs Baseball Club, LLC*, No. 17 C 9023, 2023 WL 11951488, at *4 (N.D. Ill. Apr. 6, 2023) ("A revised expert report that is consistent with the core opinions expressed in the original expert report is likely to qualify as a supplemental report . . . a purportedly supplemental report that . . . introduces new theories is better characterized as a new report." (cleaned up)); *E.C. By Mario C. v. Cmty. Sch. Corp. of E. Hancock Cnty.*, No. 1:19-CV-03563-JPH-DML, 2021 WL 12310135, at *2 (S.D. Ind. Aug. 4, 2021) ("[C]ase law nearly uniformly holds that when a 'supplemental' expert report served *after* the disclosure deadline gives new opinions or provides materially new bases for opinions, the new report cannot be characterized as a mere supplement allowed under Rule 26(e)."); *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 843–44 (N.D. Ill. 2018) ("Supplementary reports cannot

offer entirely new expert opinions; rather, they should clarify or expand upon information in the expert's original report or information given during the expert's deposition." (cleaned up)). The Court therefore denies Plaintiffs' request to supplement Netz's report.

### D. Common Questions Do Not Predominate

Lastly, Plaintiffs argue that the class should remain certified even without common proof of damages as common questions continue to predominate. As the Court previously explained with respect to PetSmart, in the absence of common proof of damages on the facts of this case, "[q]uestions of individual damages will inevitably overwhelm questions common to the class." (ECF No. 314 at 26 (citing *Comcast*, 569 U.S. at 34).) This logic is stronger as to Plaintiffs' deceptive-practices claim against Hill's because Plaintiffs have conceded that individual determinations must be made as to liability in determining whether individual consumers have been deceived. (ECF No. 316 at 21.) As such, the Court finds no basis to depart from its past holding that common questions do not predominate on the facts present in this case in the absence of a model demonstrating common proof of damages.[1]

Accordingly, because Plaintiffs' damages model does not provide common proof of damages as to their deceptive-practices claim, supplementation of the expert report is inappropriate, and individual issues predominate, the Court decertifies the class.

---

[1] To be clear, this decision does not make the mistake of assuming that "commonality of damages is legally indispensable" to a class action. *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014). Instead, the Court has considered the significant number of individual issues that must be resolved coupled with "practical considerations that may make class treatment unwieldy despite the apparently common issues." *Id.* And requiring individual proceedings as to whether each individual consumer was deceived and the amount of their damages would be unwieldy and undermine any benefit from the resolution of common issues on a class-wide basis.

## CONCLUSION

For the foregoing reasons, the Court grants Hill's' motion to decertify the class [409] and denies Hill's' motion on the disclosure of trial plans as moot [426]. The Court grants the parties' motions to seal [416] [418] for the reasons set forth therein. The Court also grants the pending motion to withdraw counsel [433]. The parties shall submit a joint status report by 6/26/25 proposing next steps in this litigation. This case is set for telephonic status hearing on 7/2/25 at 9:30 a.m.

**SO ORDERED.**                                                         ENTERED: June 9, 2025

_____
**HON. JORGE ALONSO**
**United States District Judge**